COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JOSE BARAJAS,                                                  )

                                                                              )               No.  08-97-00405-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
168th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )                 
(TC# 970D05614)

                                                                              )

 

 

O
P I N I O N   O N   R E M A N D

 








Jose Barajas
appeals his conviction of two counts of indecency with a child.  A jury found Appellant guilty and assessed
punishment at 10 years=
imprisonment, probated.  On original
submission, we reversed and remanded the trial court=s
judgment after determining that the trial court=s
refusal to allow Appellant to ask voir dire questions
regarding the victim=s
age was constitutional error.  See
Barajas v. State, No. 08‑97‑00405‑CR, slip op. at 5 (Tex.App.‑-El Paso Feb. 4, 1999, pet. granted)(not designated for publication), vacated, 93 S.W.3d
36 (Tex.Crim.App. 2002)(en banc).  The Court of Criminal Appeals granted the
State=s
petition for discretionary review and in its Barajas opinion, the Court
held that the trial court did not abuse its discretion when it did not permit
Appellant to ask venire members vague questions as to whether they could be
fair and impartial in a case in which the victim was a certain age.  Barajas, 93 S.W.3d
at 40-2.  The Court vacated our
judgment and remanded the case with instructions to address Appellant=s remaining issues.[1]  Id. at 42,  overruling, Nunfio
v. State, 808 S.W.2d 482 (Tex.Crim.App.
1991).  After a careful review of those
twenty-one issues, we affirm the trial court=s
judgment.

Appellant does not
contest the sufficiency of the evidence relating to his conviction,
therefore we provide only a brief recitation of the facts.  C.B., the complainant, testified that in 1992
when she was nine years old her father, Appellant, kissed and fondled her in
the bedroom on a number of occasions when her mother was away from the family=s apartment.  C.B. recalled that the first incident
occurred when her mother was gone and C.B. and her younger sister were watching
cartoons on the television.  Appellant
told C.B. to go to the bedroom. 
Appellant walked in after C.B. and told her to sit down on the bed.  C.B. stated that Appellant was sitting next
to her on the bed and started rubbing her back. 
Appellant then kissed her on the mouth. 
The kisses were pecks and Appellant did this for two to three seconds
before leaving the room and going into the bathroom alone.  C.B. then went back to the living room and
sat down.  C.B. felt confused and did not
talk to Appellant about what had happened.








The next incident
occurred about a couple of Saturdays later. 
Again, C.B. and her sister were watching cartoons and Appellant told
C.B. to go into the bedroom.  Appellant
followed her in and told her to lie on the bed. 
After telling her twice to lie down, C.B. did what Appellant
requested.  Appellant told C.B. to take
off her t-shirt.  Appellant then lay next
to C.B. and started pecking her on the mouth and touching her breasts with his hand.  This lasted for a couple of minutes and then
Appellant left the room and went into the bathroom.  C.B. got up, put on her 

t-shirt,
and returned to the living room to watch cartoons.  Appellant told C.B. not to tell her mother
because if she did, her mother would be very mad at her.  C.B. did not tell anyone because she was
scared and confused and did not know what to do.  C.B. also stated that she did not know that
what had happened was a bad thing.

The third incident
occurred a couple of weeks later.  Again, C.B. was watching Saturday morning
cartoons.  Appellant tapped her on the
shoulder and told her to go into the bedroom. 
Appellant followed C.B. in and told her to take off her t-shirt and lie
on the bed.  Appellant lay next to her
and started kissing her on the lips and touching and kissing her breasts.  This happened for a couple of minutes before
Appellant left and went into the bathroom. 
Appellant told C.B. not to tell anyone. 
C.B. felt scared and confused.








C.B. also testified
to a fourth incident between her and Appellant. 
As in the other incidents, C.B. was watching Saturday morning cartoons
when Appellant tapped her on the shoulder and told her to go into the bedroom.  Appellant told her to take off her t-shirt
and lie on the bed.  Appellant lay next
to C.B., kissed her on the lips, and touched and kissed her breasts.  This time Appellant rubbed his hand on top of
her shorts and took her hand and pulled it toward him as if he wanted her to
touch the front part of his genitals. 
C.B. kept pulling her hand away and this went on for a couple of
seconds.  Appellant then left and went to
the bathroom.  C.B. put on her t-shirt
and went to the living room.  C.B.
testified that she did not tell anyone for awhile because she was confused
about what was happening.

In 1994, C.B.
watched a movie at her elementary school about people who abuse and sexually
abuse children.  C.B. recalled that the
movie discussed the subject of being touched in the wrong places and it not
feeling comfortable and to tell somebody because it was wrong.  After seeing the movie, C.B. knew that her
father had done something that was wrong. 
C.B. then confided in her mother that Appellant had touched her in the
wrong places.  At that point, Appellant
was no longer living with the family and C.B. thought he had been gone about
three years.  C.B. also testified that
she did not have any reason to think Appellant was going to move back into the
house and did not make up the allegations because her mother told her to do so.

C.B.=s
mother, Nancy Barajas, testified that she and Appellant were married in 1982
and have four children together.  In
1992, Ms. Barajas and Appellant separated and later divorced.  Ms. Barajas recalled that she was shocked and
upset when she found out what had happened to C.B.  Before the day of C.B.=s outcry, Ms. Barajas had never spoken
with C.B. about good touching and bad touching. 
Ms. Barajas contacted her sister-in-law, who advised her to call the
police.  Ms. Barajas called the police
the following day.








At the time of C.B.=s
outcry, Ms. Barajas did not know where her husband was and had no reason to
think that he was coming back.  Ms.
Barajas had asked Appellant to leave in 1992 and had not seen him until he was
brought back for this case.  In the four
years that passed, Ms. Barajas did not think he was going to come back
into her life.  Ms. Barajas never told
the children why she and Appellant separated. 
Ms. Barajas stated that she did not separate from Appellant because of
C.B.=s
allegations.  Further, Ms. Barajas
testified that she had no problems with Appellant that would have made her put
her daughter through this prosecution.

At trial,
Appellant testified in his defense. 
Appellant denied C.B.=s
allegations of sexual contact.  Appellant
stated that he loved C.B. and the other children and had not seen them in about
three years.  Appellant first found out
about his daughter=s
accusations in August 1995 upon his arrest in Wisconsin, where he had been
living for about two and half years. 
Appellant stated that he had no problems with his children.

The jury found
Appellant guilty of two counts of indecency with a child and sentenced him to
ten years=
imprisonment, probated.  Appellant timely
appealed his conviction.

Limitation
on Cross-Examination

In Issues Five
through Ten, Appellant argues that the trial court abused its discretion when
it restricted cross-examination of C.B. and Nancy Barajas.  Specifically, Appellant contends that the
trial court erred in not allowing Appellant to cross-examine C.B. about her
parents= divorce
proceeding and in not allowing Appellant to cross-examine Ms. Barajas about the
divorce proceedings and the contempt proceeding for failure to pay child support.  Appellant asserts that the trial court=s refusal to restrict cross-examination
of C.B. and Ms. Barajas violated his right to confrontation because it denied
admission of evidence to show their bias and motivation to fabricate the
allegations against Appellant.








The Sixth
Amendment guarantees the right of an accused in a criminal proceeding to be
confronted with the witnesses against him. 
Delaware v. Van Arsdall,
475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d
674 (1986); Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct.
1105, 1110, 39 L.Ed.2d 347 (1974). 
Within this right, as applied to the states through the Fourteenth
Amendment, is a defendant=s
right of cross-examination.[2]  Davis, 415 U.S. at
315-16, 94 S.Ct. at 1110; Pointer v. Texas,
380 U.S. 400, 403, 85 S.Ct. 1065, 1067-68, 13 L.Ed.2d
923 (1965).  A defendant is
entitled to pursue all avenues of cross-examination reasonably calculated to
expose a motive, bias, or interest for the witness to testify.  Carroll v. State,
916 S.W.2d 494, 497 (Tex.Crim.App. 1996).  However, the trial court retains broad
discretion to impose reasonable limits on cross-examination to prevent
harassment, prejudice, confusion of the issues,
witness safety, and introduction of cumulative or collateral evidence.  See Lagrone v.
State, 942 S.W.2d 602, 613 (Tex.Crim.App. 1997), cert.
denied, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d
235 (1997); Carroll, 916 S.W.2d at 496-97.  We review the trial court=s decision to restrict 

cross-examination
of a witness under an abuse of discretion standard.  Cantu v. State, 939 S.W.2d 627, 635 (Tex.Crim.App. 1997), cert. denied, 522 U.S. 994, 118
S.Ct. 557, 139 L.Ed.2d 399 (1997).  An abuse of discretion is shown when the
trial court=s
determination is so clearly wrong as to lie outside the zone of reasonable
disagreement.  Cantu v. State, 842
S.W.2d 667, 682 (Tex.Crim.App. 1992), cert. denied,
509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731
(1993).  








Outside the
presence of the jury, defense counsel explained Appellant=s need to cross-examine C.B. and Ms.
Barajas about the divorce and the familial relationships.[3]  Defense counsel argued that he wanted to
question C.B. about the divorce because the child was hostile to Appellant and
did not want Appellant to return, therefore she made
allegations against him.  Defense counsel
thought it inconceivable that C.B.=s outcry did not play a part in Ms.
Barajas filing for divorce a few weeks later. 
Defense counsel reasoned that Ms. Barajas and her daughter were hostile
towards Appellant before the divorce, which led to a commonly held feeling that
they wanted Appellant to stay out of the house. 
Under defense counsel=s
theory of the case, there was a reason for disliking Appellant and this bias
continued on to a point where C.B. made allegations against Appellant.  Defense counsel argued that the outcry was a
result of C.B.=s
dislike towards Appellant, which continued on as a vendetta to get back at
him.  The trial judge remarked that the
divorce itself had nothing to do with C.B.=s outcry under that theory and defense
counsel replied that it did not, but the divorce was the last stage of acrimony
between Appellant and Ms. Barajas, as husband and wife.  The trial judge thought it unnecessary for
Appellant to get into the divorce on cross-examination.  The trial judge restricted Appellant from
questioning C.B. and Ms. Barajas about the divorce proceedings, determining
that it would create problems in the jury=s
comprehension of the facts in this case.[4]








After
cross-examining C.B. and Ms. Barajas, defense counsel again asked the trial
court outside the jury=s
presence to question these witnesses about the divorce proceedings and the
later child support action filed against Appellant.  Defense counsel again argued that since the
divorce occurred three weeks after C.B.=s outcry, it may be relevant to the
case.  Defense counsel asserted that it
may be that C.B. was motivating her mother to file the divorce.  The trial judge denied Appellant=s request to enter the divorce petition
and final decree into evidence and remarked that such evidence would confuse
the entire proceeding and the issue in this case.  Appellant then cross-examined C.B. and Ms.
Barajas regarding the divorce and proffered their testimony as bills of
exception.

C.B. testified
outside the jury=s
presence to the following with respect to her parent=s
divorce.  C.B. was aware that her parents
were divorced and that her mother had filed for divorce sometime shortly after
her outcry.  C.B. admitted that she did
not want Appellant to move back in or come back home at the time she made her
outcry.  C.B. also admitted that she did
not think of Appellant as her father anymore because of what he had done to
her.  In response to the State=s voir dire
questions, C.B. stated that she did not know on what date her mother filed for
divorce nor did she know how long her mother had been thinking about filing for
divorce.  At the time of her outcry, C.B.
only knew that her parents were separated and she believed that Appellant was
gone and was not coming back.  C.B.
testified that her decision to outcry about what Appellant had done had nothing
to do with her mother filing for divorce. 
At the conclusion of C.B.=s testimony on the divorce, the trial
court remarked that in evaluating the prejudicial and probative value of this
evidence, it found there to be no probative value to it and that it would just
confuse the issues.








Ms. Barajas also
testified outside the jury=s
presence about her divorce from Appellant. 
Ms. Barajas was not sure if she filed the divorce before or after C.B.=s
outcry.  She admitted that one of the
purposes of filing divorce was to make sure that Appellant did not come
back.  Ms. Barajas also admitted
that she did not want Appellant in her life anymore nor did she want him in her
daughter=s life because
of what had happened.  The divorce,
however, was unrelated to the outcry and was between Appellant and her.  Ms. Barajas stated that she was only waiting
for a pro bono appointed attorney to be able to file her divorce
case.  Ms. Barajas testified that she had
told Appellant to leave and not come back. 
Years passed and she had no idea where Appellant was and he never gave
her any indication that he was coming back. 
Ms. Barajas did not believe Appellant was coming back, but they were
still married so it was possible that Appellant could want to come back.  Ms. Barajas stated that she had made her
decision to file for divorce before C.B. told her anything because she had her
own reasons for doing so.  Even if C.B.
had not made her outcry, Ms. Barajas would not have changed her decision to
divorce Appellant.  Her decision was
based on the way Appellant behaved with her during the marriage and nothing
else.  Ms. Barajas recalled that she
filed for divorce by publication because she did not know where Appellant was
living and that Appellant never contacted her, did not appear for the divorce
proceedings, and never called her afterwards.

With respect to
current child support litigation, Ms. Barajas testified in the bill that after
Appellant was found, he was ordered to pay child support.  Ms. Barajas stated that there had been a
hearing in which Appellant was ordered to start paying child support, but he
had not paid it.  Ms. Barajas was not
angry at Appellant for not paying child support, but did think it was
unfair.  Defense counsel expanded his
proffer of evidence to include on-going litigation between Ms. Barajas and
Appellant regarding child support. 
Defense counsel argued that this evidence showed a bias against
Appellant.  The trial court denied Appellant=s request.

 








A trial court has
discretion under Rule 403 of the Texas Rules of Evidence, as it did under its
predecessor in the Texas Rules of Criminal Evidence, to exclude relevant
evidence Aif its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury or by considerations of undue
delay, or needless presentation of cumulative evidence.@[5]
See Tex.R.Crim.Evid.
403 (Repealed).  Confusion of the issues
can occur when admitting certain evidence raises the probability that a side
issue may be created which will unduly distract the jury from the main issues
in the case.  See
Smith v. State, 959 S.W.2d 1, 13 (Tex.App.--Waco
1997, pet. ref=d).  








Here, Appellant
sought to introduce evidence concerning Appellant=s
divorce from Ms. Barajas and subsequent litigation for child support.  During the State=s
case-in-chief, C.B. testified that at the time of her outcry, Appellant had
been gone for years and she did not think he was coming back again.  Ms. Barajas also did not think Appellant was
going to come back into her life and had never told the children why they
separated.  Further, Ms. Barajas denied
that C.B.=s
allegation was the reason for the separation. 
The trial court remarked that based on the lack of fear of Appellant=s return, there was no probative value
to support defense counsel=s
theory that the outcry was meant to keep Appellant away from the home.  We observe that the trial court did not limit
Appellant=s ability
to question C.B. and Ms. Barajas about hostility and tensions within the
familial relationships generally, testimony which may have presented evidence
to support Appellant=s
defensive theory in this case.  Based on
the record before this Court, we find that the trial court could have
reasonably concluded that the excluded evidence presented a danger of confusion
of the issues, which substantially outweighed any probative value.  Issues Five through Ten are overruled.

Prior
Statements

In Issues Eleven
through Fifteen, Appellant argues that the trial court erred in failing to
allow Appellant to confront defense witnesses, Officer Bridgette Carrillo and
Officer Thomas John Belcher with their written statements taken from interviews
with C.B. and Ms. Barajas about C.B.=s allegations against Appellant.  Appellant asserts that he sought to elicit
testimony from the officers as to C.B.=s initial statements to the police
officers in order to show any inconsistencies with her trial testimony.  Appellant contends that the trial court=s action violated his right to confront
witnesses and his right to due process and due course of law under the federal
and Texas Constitutions.  We review the
trial court=s
evidentiary ruling under an abuse of discretion standard.  See Cantu, 939
S.W.2d at 635.

Examination
of Officer Carrillo








At trial,
Appellant called Officer Carrillo as a witness to question her about her
investigation of C.B.=s
case.  Officer Carrillo stated that she
was familiar with the complainant=s
name, but needed to review the case. 
Defense counsel was allowed to show Officer Carrillo her statement and
notes in the case.  Defense counsel asked
Officer Carrillo if examining the documents had refreshed her recollection of
the case and Officer Carrillo replied that she did not recall the case
itself.  Officer Carrillo stated that her
notes refreshed her memory, but she could not recall the incident when she took
statements or the case, other than what was described in the notes.  The State prosecutor requested that defense
counsel make sure that Officer Carrillo had an independent recollection of the
events.

Defense counsel
continued direct examination by questioning Officer Carrillo generally about
child interviewing procedure and then asked Officer Carrillo if she had an
independent recollection of whether she had interviewed C.B. alone or with her
mother.  Officer Carrillo stated that she
could not recollect on her own memory. 
Defense counsel presented Officer Carrillo with her report to refresh
her memory and Officer Carrillo testified that C.B.=s mother was not present.  Defense counsel then asked Officer Carrillo
if she recalled C.B. telling her that she had seen a movie the night
before.  Officer Carrillo stated that she
could not recall from her own memory, but that this information was in the
report presented to her.  The State
objected on grounds that defense counsel was reading from documents not
admitted into evidence, rather than using the documents to refresh the witness=s recollection.  The State later objected to defense counsel=s line of questioning and requested
that defense counsel continue to question Officer Carrillo as to her
independent recollection.  The State also
argued that it would request admission of the whole document under the rule of
optional completeness if Officer Carrillo continued to read only portions of
her report.  The trial court sustained
the State=s
objection.








Defense counsel
continued his examination of Officer Carrillo, questioning her as to specific
allegations in the report from the officer=s
interview of Ms. Barajas.  Officer
Carrillo testified that she could not recall from her memory or anything else
if Ms. Barajas actually said that C.B. told her that Appellant had made C.B.
lie on top of him or he on top of C.B. 
Officer Carrillo stated that the only way that she knew it actually
occurred was because it was written in her report.  On cross-examination, Officer Carrillo
testified that even after reading her statement, she did not remember seeing or
talking with C.B. and Ms. Barajas or taking their statements.  The State then attempted to question Officer
Carrillo about certain portions of her report and defense counsel objected on
hearsay grounds.  Defense counsel
explained to the trial judge that Appellant did not seek to admit Officer
Carrillo=s
statement into evidence, but rather the document was being used to refresh the
witness=
recollection, which did not implicate the rule of optional completeness.








On appeal,
Appellant argues that the trial court erred in not allowing him to confront
Officer Carrillo with her prior statement. 
Appellant asserts that under Rule 803(5) of the Texas Rules of Criminal
Evidence,[6]
the recorded recollection hearsay exception, even if a witness=s memory is not refreshed, she can
testify from her statement so long as the statement was made when the events
were fresh in the witness=s
mind.  Appellant did not raise this
argument at trial.  See Tex.R.App.P. 33.1.  Rather, defense counsel argued to the
trial court that he had not asked Officer Carrillo to read any of her
statement, but instead asked her to look at her statement to refresh her
memory.  See Tex.R.Crim.Evid. 611 (Repealed).  Appellant did not attempt to introduce Officer
Carrillo=s
testimony into evidence as a recorded recollection hearsay exception.  Further, Appellant did not present evidence
to show that Officer Carrillo=s
testimony qualified as a hearsay exception. 
See Johnson v. State, 967 S.W.2d 410, 416 (Tex.Crim.App.
1998) (discussing the four elements for setting forth the proper predicate for
admissibility of recorded recollections). 
Issues Eleven through Fifteen as they relate to Appellant=s examination of Officer Carrillo are
overruled.

Examination
of Officer Belcher

Within Issues
Eleven through Fifteen, Appellant also contends that the trial court erred in
sustaining the State=s
objections to Officer Belcher=s
testimony concerning the supplemental report he made while investigating C.B.=s
allegations.  Appellant asserts that in
so doing, the trial court denied his right to confront Officer Belcher with his
prior statement to show that C.B.=s story had changed since she first
reported the allegations to the police.

Officer Belcher
testified that he was involved in investigating an alleged offense against
C.B., but could not recall the exact date of the investigation.  Defense counsel presented Officer Belcher
with a supplemental report in which Officer Belcher was listed as the reporting
officer.   After reviewing the document,
Officer Belcher stated that it refreshed his recollection that the
investigation occurred in early August 1994. 
Defense counsel proceeded to question Officer Belcher as to what he
recalled from speaking with C.B. about the allegations and the State objected
on hearsay grounds and improper impeachment of C.B.  The trial court sustained the State=s objection, but permitted examination
of Officer Belcher on voir dire to establish whether
he took C.B.=s
statement in his report.








Outside the jury=s presence, Office Belcher testified
that he did not remember C.B.=s
case and did not remember what was said when he talked to C.B. and Ms.
Barajas.  Officer Belcher did not
remember actually writing the report, but knew that he did because it has his
name on it.  Officer Belcher conceded
that he could not testify on the witness stand that the report refreshed his
recollection as to what C.B. told him. 
Officer Belcher also stated that the report was just a brief synopsis of
what had happened and he did not know if C.B. told him the information or if
Ms. Barajas told him that this was what C.B. had said.  Even after reviewing the report, Officer
Belcher could not remember who, either C.B. or her mother, had told him what in
his statement.  Defense counsel requested
that Officer Belcher=s
report be admitted into evidence as an exhibit and the trial court denied the
request.  On direct examination before
the jury again, Officer Belcher testified that he did not remember what C.B.
and Ms. Barajas had told him and that he had limited involvement in this case.

On appeal,
Appellant contends that Officer Belcher=s
testimony about details in his report was admissible under Rule 803(5) of the
Texas Rules of Criminal Evidence.  As
with Officer Carrillo=s
examination, however, Appellant did not present this argument to the trial
court and Officer Belcher=s
statement was not Ashown to
have been made or adopted by the witness when the matter was fresh in his
memory and to reflect that knowledge correctly . . . .@  See Tex.R.Crim.Evid. 803(5)(Repealed).  Issues Eleven through Fifteen are overruled
in their entirety.  

Character
Witnesses

In Issues Sixteen
through Eighteen, Appellant contends that the trial court erred in sustaining
the State=s
objections to character witnesses= testimony regarding their personal
knowledge of Appellant as a law-abiding citizen and his veracity and their
knowledge of Appellant=s
reputation in the community for acting appropriately around children and for
being a law-abiding citizen.













The defendant in a
criminal case may introduce evidence of a specific pertinent character trait
for the purpose of proving action in conformity therewith on a particular
occasion.  See Tex. R.Crim.Evid.
404(a)(1)(Repealed), current version at Tex.R.Evid. 404(a)(1); Thomas
v. State, 669 S.W.2d 420, 423 (Tex.App.‑‑Houston
[1st Dist.] 1984, pet. ref=d).  Three basic methods are available for proving
character:  (1) reputation of the person
in the community; (2) personal opinion testimony of witnesses who know the
person; and (3) specific instances of conduct where it is an essential element
of a charge, claim, or defense.[7]  See Tex.R.Crim.Evid. 405 (Repealed); Hedicke
v. State, 779 S.W.2d 837, 839-40 (Tex.Crim.App.
1989), cert. denied, 493 U.S. 1044, 110 S.Ct.
840, 107 L.Ed.2d 836 (1990).  Different
predicates are required for reputation and opinion testimony.  Calderon v. State,
950 S.W.2d 121, 131 (Tex.App.‑‑El Paso
1997, no pet.).  To be qualified
to testify as to the defendant=s
reputation, the witness must be familiar with that reputation based on
discussions with others about the defendant or on hearing others discuss the
defendant=s
reputation.  Turner v. State, 805
S.W.2d 423, 429 (Tex.Crim.App. 1991), cert. denied,
502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991);
House v. State, 909 S.W.2d 214, 218 (Tex.App.--Houston
[14th Dist.] 1995), aff=d, 947 S.W.2d 251(Tex.Crim.App. 1997). 
To be qualified to give an opinion of the accused=s
character, the witness must be familiar with the underlying facts or
information upon which the opinion is based. 
See Tex.R.Crim.Evid. 405(a)(Repealed)
now Tex.R.Evid. 405(a).  We apply an abuse of discretion standard in
determining whether a trial court erred in admitting such evidence.  See Montgomery v. State, 810 S.W.2d
372, 391 (Tex.Crim.App. 1991)(Opin. on reh=g). 
Further, we will uphold the trial court=s
ruling if it can be upheld on any valid theory, regardless of whether the State
asserted the theory at trial, if the State is not raising the issue on
appeal.  See State
v. Mercado, 972 S.W.2d 75, 77-8 (Tex.Crim.App.
1998); Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App.
1990).

Character
Testimony of Julieta Morales

Julieta Morales testified that she managed the apartments
where Appellant, his wife, and children had previously lived.  Ms. Morales stated that she has known
Appellant for seven years.  She had an
opportunity to see Appellant interact with his family and never saw Appellant
doing anything wrong with respect to acting inappropriately with his
children.  Ms. Morales lived in the same
general community with Appellant and stated that she knew his reputation in
that community for being law-abiding and that reputation was good.  Ms. Morales also stated that she knew his
reputation for truthfulness and that reputation was good.  Defense counsel then asked Ms. Morales, ADo
you have an opinion as to whether Mr. Barajas is a law-abiding person?@ 
The State objected on relevancy grounds and the trial court sustained
the objection.  Defense counsel then
asked, ADo you have an opinion as to whether Mr. Barajas acts
appropriately around children?@
and the State objected, arguing that the question
called for speculation and needed to be based on personal knowledge.  The trial court sustained the State=s objection.








The State contends
on appeal that Appellant failed to establish a basis for asking
Ms. Morales= opinion
about Appellant being a law-abiding person or about whether Appellant acts
appropriately around children.  While Ms.
Morales did offer testimony as to Appellant=s
reputation for being law-abiding, defense counsel did not lay the proper
predicate for asking Ms. Morales=
personal opinion on Appellant=s
law-abiding nature, that is, defense counsel did not establish Ms. Morales=
familiarity with the underlying facts or information upon which her opinion was
based.  See Tex.R.Crim.Evid. 405(a)(Repealed).

Defense counsel
also failed to lay the proper predicate for asking Ms. Morales= opinion as to whether Appellant acts
appropriately around children.  Ms.
Morales did testify that she had opportunity to see Appellant interact with his
children, however, the trial court could have reasonably determined that
defense counsel had not yet shown that Ms. Morales was qualified to give an
opinion as to Appellant=s
behavior around children generally or that counsel had not clearly established
the information upon which Ms. Morales based her opinion on this matter by the
format of the question posed.  Even if
the trial court erred in sustaining this question, such error was
non-constitutional in nature.  See
Tex.R.App.P. 44.2(b); King v.
State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).  Given that other character witnesses
testified that in their opinion, Appellant acted appropriately around his and
other children, we are fairly assured that any error, if any, did not influence
the jury=s
verdict.  See King, 953 S.W.2d at
271; Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App.
1998).  Therefore, we cannot conclude
that the trial court abused its discretion in sustaining the State=s objection to defense counsel=s questions.  

Character
Testimony of Maria Molina








Maria Molina
testified that she has known Appellant for about ten or eleven years as a
friend through her brother.  Ms. Molina
stated that they lived in the same community and that she has had an
opportunity to see Appellant interact with his children several times about six
years ago.  Ms. Molina never saw
Appellant treat his children badly and he has always acted appropriately with
her brother=s
children.  Defense counsel then asked Ms.
Molina, ADo
you know what Mr. Barajas=
reputation for being law-abiding is in the community?@
to which the State objected on relevancy grounds and
the trial court sustained the objection. 
Defense counsel then asked, ADo you know Mr. Barajas=
reputation for being appropriate with children in the community?@ 
The State objected, arguing that the question was not relevant and the
trial court sustained its objection.  Ms.
Molina then testified that she knew Appellant=s
reputation for being truthful in the community and that reputation was
good.  Ms. Molina also stated that in her
opinion, Appellant acts appropriately with children.  The trial court, however, sustained the State=s objection to the following
questions:  ADo
you personally have an opinion as to whether Mr. Barajas is law-abiding or not?@ and ADo you have an opinion as to whether
Mr. Barajas is an honest person?@








The State contends
on appeal that Appellant failed to establish a basis for the offered opinion
and reputation testimony of Ms. Molina. 
Ms. Molina did testify that she lived in the same community as Appellant
and had known him for many years. 
However, defense counsel did not lay the proper predicate regarding how
Ms. Molina was familiar with Appellant=s
reputation for being law-abiding or for being appropriate with children in the
community beyond her acquaintanceship with Appellant.  Defense counsel also did not lay the proper
predicate for asking Ms. Molina her personal opinion as to whether Appellant
was law-abiding or an honest person.  The
trial could have reasonably determined that in defense counsel=s line of questioning, he had not yet
established the information upon which Ms. Molina was to base her opinion with
respect to these matters.  Therefore, we
cannot conclude that the trial court erred in sustaining the State=s objection to these contested
questions.

Character
Testimony of Rosa Elena Silva

Rosa Elena Silva
testified that she lives in Juarez, Mexico and has known Appellant for about
eleven years as a friend of her brother. 
Ms. Silva stated that she had an opportunity to see Appellant interact
with his children and had never seen Appellant do anything inappropriate.  Defense counsel then asked Ms. Silva, ADo you have an opinion as to whether
Mr. Barajas is a law-abiding person or not?@  Without stating its reasoning, the State
objected and the trial court sustained the objection.  Ms. Silva then testified that in her opinion,
Appellant is good towards his children and acts appropriately towards
them.  Defense counsel then asked, ADo you have an
opinion as to whether or not Mr. Barajas is an honest person?@ 
The trial court sustained the State=s
objection to this question.








The State contends
on appeal that defense counsel in his line of questioning failed to establish a
basis for Ms. Silva=s opinion
with respect to Appellant being a law-abiding person or an honest person.  Ms. Silva did testify that she knew Appellant
for many years, but defense counsel did not try to establish the proper
predicate before questioning Ms. Silva about her opinion on whether Appellant
was law-abiding and honest.  Even if Ms.
Silva=s lengthy  acquaintanceship
with Appellant and having seen him interact with his children was sufficient
personal knowledge to base an opinion as to Appellant=s
law-abiding nature and honesty, we cannot conclude that the trial court=s error, if any, was harmful.  Given that other character witnesses
testified to their opinion that Appellant was honest and law-abiding and that
Appellant had a reputation for being law-abiding and truthful, we are fairly
assured that any error, did not influence the jury=s verdict.  See Tex.R.App.P. 44.2(b); Johnson, 967 S.W.2d at 417.  

Character
Testimony of Alvaro Silva

Alvaro Silva
testified that he and Appellant were compadres and
that he has known Appellant for thirteen years. 
Mr. Silva has six children.  Mr.
Silva stated that he had an opportunity to see Appellant interact with his
children as well as with Appellant=s
own children on several occasions and never saw Appellant act inappropriately
with either set of children. 
Mr. Silva stated that Appellant=s
children did not appear afraid of him, but rather acted very close to
Appellant.  Defense counsel then asked, ADo you know
Mr. Barajas=
reputation for being 

law-abiding?@ and the trial
court sustained the State=s
objection.  Defense counsel then asked, ADo you know
Mr. Barajas=
reputation for being appropriate with children?@
and the State objected, arguing that this was not a
proper reputation question.  The trial
court sustained the objection.  Mr. Silva
then testified that he knew Appellant=s
reputation for being truthful and that Appellant is honest.  Defense counsel then asked, ADo you
personally have an opinion as to whether Mr. Barajas is a law-abiding person?@ and the trial
court sustained the State=s
objection to the question as not relevant. 
Mr. Silva then testified that in his opinion, Appellant acts
appropriately with children and treats them very well.  Mr. Silva stated that he never saw Appellant hitting or hurting his children.








The State contends
on appeal that Appellant failed to establish the basis for the offered opinion
and reputation testimony of Mr. Silva. 
Mr. Silva did testify that he had known Appellant thirteen years, however, defense counsel did not establish beyond this
fact how Mr. Silva was familiar with Appellant=s
reputation such that he was qualified to offer testimony about Appellant=s reputation for being truthful and
honest.  Defense counsel also did not lay
a proper predicate before questioning Mr. Silva about his opinion on whether or
not Appellant is a 

law-abiding
person.  Therefore, the trial court did
not abuse its discretion in sustaining the State=s
objections to defense counsel=s
line of questioning during Mr. Silva=s
testimony.  

Having considered
Appellant=s Issues
Sixteen through Eighteen, we overrule them in their entirety.

Excluding
Additional Character Witnesses

In Issues Nineteen
through Twenty-One, Appellant argues that the trial court erred in not allowing
Appellant to call three additional character witness
during his case-in-chief.

Appellant contends that the trial
court=s ruling
denied him his right to due process and due course of law under the federal and
Texas Constitutions.

After introducing
Mr. Silva=s
testimony at trial, Appellant attempted to call Laura Herrera as a
witness.  The State objected to the
cumulative nature of the evidence. 
Defense counsel explained to the trial judge that Ms. Herrera is one of
Mr. Silva=s
daughters and would offer the same testimony and would also state that
Appellant is a good person.  The trial
court sustained the State=s
objection to cumulative witnesses.  In addition
to Ms. Herrera, defense counsel had wanted to call two other witnesses,
Veronica Marquez and Yolanda Silva. 
Appellant=s counsel
proffered to the trial court that each witness would testify as their personal
opinion that Appellant was a truthful person, who acts appropriately around
children, and is law-abiding.  Further,
they would testify as to their knowledge of Appellant=s
reputation in the community as being a truthful, law-abiding person, who
behaves appropriately around children.








We review the
trial court=s
evidentiary rulings under the abuse of discretion standard.  Montgomery, 810
S.W.2d at 391.  Texas Rule of Criminal
Evidence 403 favors admissibility of relevant evidence, unless its Aprobative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.@[8]  Tex.R.Crim.Evid.
403 (Repealed) now Tex.R.Evid. 403. 
The Texas Court of Criminal Appeals noted in Alvarado v. State
that Texas courts have long recognized cumulativeness as a factor allowing the
exclusion of probative evidence.  Alvarado v. State, 912 S.W.2d 199,
213 (Tex.Crim.App. 1995).  Further, the Court stated that Rule 403
authorizes exclusion of relevant evidence because of considerations of undue
delay, or needless presentation of cumulative evidence, factors which are
concerned with the efficiency of judicial proceedings rather than the threat of
inaccurate decisions.  Id.
at 212. 

Appellant cites
two cases in support of his argument that the trial court committed error.   Relying on Green v. State, 700 S.W.2d
760 (Tex.App.--Houston [14th Dist.] 1985), aff=d,
727 S.W.2d 272 (Tex.Crim.App. 1987) and Thompson
v. State, 379 S.W.2d 664 (Tex.Crim.App. 1964),
Appellant argues that the trial court erred in not allowing him to call the
three additional character witness because the State never stipulated to the
jury that the testimony of the excluded witnesses would be the same as the
other character witnesses nor did it stipulate as to Appellant=s good reputation.  However, we find Appellant=s case distinguishable.








In Thompson,
the issue of appellant=s
suspension of sentence was submitted to the jury pursuant to former Art. 778 C.C.P, which required the court to A>permit testimony as to the general
reputation of defendant to enable the jury to determine whether to recommend
the suspension of sentence.=@ 
Thompson, 379 S.W.2d at 665.  After appellant had called four character
witnesses to testify as to her reputation for being a peaceful and law-abiding
citizen, the court refused to permit appellant to introduce further
testimony.  Id.
at 666.  Referencing Branch=s Ann.P.C.2d 176, Sec. 170, the Thompson
Court stated that Astatutory
right of an accused to introduce testimony of his general reputation for the
consideration of the jury in determining whether to recommend the suspension of
his sentence is not limited by the above rule, unless the state unequivocally
admits that he bears a good reputation, or after he has offered the testimony
of a reasonable number of witnesses in support of his reputation.@ 
Id. at 667.  Unlike Thompson, Appellant did not
offer the additional character witness testimony pursuant to a statutory
right.  

In Green,
the court of appeals relied on Thompson in holding that the trial court
erred in not permitting appellant to call additional character witness at the
guilt/innocence stage of the trial to testify to appellant=s reputation for being a peaceful and
law-abiding citizen where the State failed to stipulate to the defendant=s good reputation.  Green, 700 S.W.2d at
761.  The Court of Criminal
Appeals granted the State=s
petition for discretionary review on the its sole
ground, whether appellant had preserved error for review.  Green, 727 S.W.2d at
273.  With respect to the Thompson
precedent, the Court of Criminal Appeals in affirming Green stated: 








The Court of Appeals
opinion cited Thompson v. State, 379 S.W.2d 664 (Tex.Crim.App.1964) for
the proposition that the appellant was, absent a stipulation by the State that
the appellant did have a good reputation, entitled to call the two additional
witnesses during the guilt‑innocence stage of the trial.  It should be noted Thompson v. State, Id.,
was concerned with the action of the trial court in refusing to permit the
defendant to call several (9) additional reputation witnesses during the
punishment stage of the trial.  Thompson
v. State, Id., is therefore not directly in point.  However, a resolution of this distinction by
this Court must come in another case because the State=s
Petition for Discretionary Review did not assert that as a basis for
review.  Therefore, since the question of
harm is not before this Court we will defer to the Court of Appeals decision on
this issue.

 

Green, 727
S.W.2d at 274-75.

Given that the
Court of Criminal Appeals did not address the applicability of Thompson
holding to exclusion of character witness testimony in the guilt-innocence
stage of the trial, we find the precedential value of
Green questionable in this regard. 
Therefore, we find that the Thompson holding is inapplicable to
Appellant=s
case.  








Here, Appellant
introduced testimony from five character witnesses who, despite the State=s various objections, offered
reputation and opinion testimony as to Appellant being an honest and
law-abiding person who acts appropriately around children.  Ms. Julieta Morales
testified that she knew Appellant=s
reputation in the community for being law-abiding and that his reputation was
good.  Ms. Morales also stated that she
knew Appellant=s
reputation for truthfulness and that reputation was good.  She had an opportunity to see Appellant interact
with his family and never saw Appellant doing anything wrong with respect to
acting inappropriately with his children. 
Ms. Maria Molina testified that Appellant had a good reputation for
being truthful in the community.  Ms.
Molina also testified that in her opinion, Appellant acts appropriately with
children.  Mr. Alvaro Silva testified
that he knew Appellant=s
reputation for being truthful and that Appellant is honest.  Mr. Silva also testified that he never saw
Appellant act inappropriately with his or Appellant=s
own children.  Ms. Rosa Elena Silva
testified that in her opinion, Appellant is good towards his children and acts
appropriately towards them. 
Ms. Silva stated that she had an opportunity to see Appellant
interact with his children and had never seen Appellant do anything
inappropriate.  Ms. Julia Sandoval
testified that Appellant was a very honest person.

Based on the
admitted character witness testimony, we conclude the trial court did not abuse
its discretion in limiting further cumulative testimony, which defense counsel
conceded would be similar testimony to that already introduced into
evidence.  Assuming arguendo
that the trial court erred, such error was not harmful to Appellant.  A trial court=s
refusal to admit evidence is reversible only if the evidence is relevant and
its exclusion is harmful to the accused. 
Canto‑Deport v. State, 751 S.W.2d 698, 700 (Tex.App.‑‑Houston [lst
Dist.] 1988, pet. ref=d);
see Bird v. State, 692 S.W.2d 65, 73 (Tex.Crim.App.
1985), cert. denied, 475 U.S. 1031, 106 S.Ct.
1238, 89 L.Ed.2d 346 (1986).  If there is
a reasonable probability that the absence of that evidence contributed to the
conviction or punishment, then the trial court=s
ruling was harmful.  Canto‑Deport,
751 S.W.2d at 700. 
In Appellant=s case
there is no harm because it is unlikely that the absence of the additional
witness testimony contributed to Appellant=s
conviction and similar testimony was introduced to the jury through Appellant=s other five character witnesses.  Therefore, we overrule Appellant=s Issues Nineteen through
Twenty-One.  

Jury
Argument

In Issues
Twenty-Two through Twenty-Five, Appellant argues that the trial court erred in
overruling his objection to the State=s
closing argument.  Appellant=s complaint is based on the following
portion of the State=
closing argument to the jury:








Prosecutor:       Once again, who is hiding the ball?  Why don=t
we have explanation for that?  How come
we=re just using bits of this?  Maybe we can argue effectively.  Does this mean [C.B.] is lying?  No. 
Think of one thing that does.  You
know, here=s the
other thing we don=t talk
about.  And I=m going to tell you something.  Mr. Roberts [defense counsel] knows that
despite all of his efforts and Mr. Morales=
[defense counsel] efforts, there=s
no real reason to think they=re
lying, just because these people are like Mr. Martin.[9]  And he knows that other things exist which only support the truth.

 

Defense:           Your honor, I=m
going to object to Counsel telling what I know to support his arguments.

 

The
Court:        Doing what?

 

Defense:           He=s
using the things I know to support guilt or something, and I don=t know.

 

The
Court:        All right.  Overruled.

 

Prosecutor:       There=s
other things that go on here.  What about
this business?  Mrs. Barajas confides
first in Ms. Ortega.  Ms. Barajas was not
this gung-ho lady that said, >I=m going to report this to the police, report
this thing to have him arrested.  I hate
him.  I hate him two years ago.  He=s gone, but I still want to go after
him.=  Is it consistent she would go talk to Ms.
Ortega about it first?  No.  That supports the truth.

 

Appellant contends that the State
was, in effect, arguing that Appellant=s
counsel knew Aof other
things@ left
undefined to the jury, which supported a verdict of guilt against
Appellant.  The jury, Appellant asserts,
was left to speculate as to the existence of other damaging evidence that
Appellant=s counsel
Aknew@
would support a finding of guilt against his client.








There are four
permissible areas of jury argument:  (1)
summation of evidence; (2) reasonable deduction from the evidence; (3) answer
to argument of opposing counsel; and (4) pleas for law enforcement.  Allridge
v. State, 762 S.W.2d 146, 155 (Tex.Crim.App.
1988), cert. denied, 489 U.S. 1040, 109 S.Ct.
1176, 103 L.Ed.2d 238 (1989); Ulloa v.
State, 901 S.W.2d 507, 514-15 (Tex.App.--El Paso
1995, pet. ref=d).  In determining the propriety of the State=s argument, we consider it in light of
the facts adduced at trial and in the context of the entire argument.  McGee v. State, 774 S.W.2d 229, 239 (Tex.Crim.App. 1989), cert. denied, 494 U.S. 1060,
110 S.Ct. 1535, 108 L.Ed.2d 774 (1990); Mosley v.
State, 686 S.W.2d 180, 183 (Tex.Crim.App.
1985).  To constitute reversible error,
the argument must be extreme, manifestly improper, violative
of a mandatory statute, or inject new and harmful facts into evidence.  Wesbrook
v. State, 29 S.W.3d 103, 115 (Tex.Crim.App.
2000), cert. denied, 532 U.S. 944, 121 S.Ct.1407, 149 L.Ed.2d. 349 (2001); Gaddis v. State, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988).








During closing
argument, defense counsel argued that the State=s
witnesses gave inconsistent versions of C.B.=s allegations, thereby calling into
doubt the veracity of C.B.=s
allegations.  Specifically, Defense
counsel stated, AAnd I would ask you to ask Mr. Rosales [prosecutor], in your
minds, of course, which is it?  Did all
of these inconsistencies come from the mind of the police officers and the
social workers, and were they adding to these allegations?  And if so, how do we know what was added and
which parts of that to believe?  Or was
it that the child gave very different stories to the doctor, to the social
worker to the police, or whatever, about what happened?  Ask Mr. Rosales to resolve that for you.@ 
Defense counsel also attacked C.B.=s credibility, arguing that C.B.=s testimony had been rehearsed and
suggesting that her allegations had been fabricated.  Pointing to inconsistencies in the State=s witnesses=
accounts of C.B.=s
outcry, defense counsel asserted during closing argument that one or more
witnesses were lying.  Defense counsel
also suggested that Mrs. Barajas and her daughter were lying because they held
ill will towards Appellant.

In the State=s closing argument, the prosecutor
responded to the defense=s
theory that either Ms. Barajas and C.B. were both
lying or C.B. had made up the allegations alone.  The prosecutor discussed the facts to which
both witnesses consistently testified, arguing at length that defense counsel=s tactics and questions were meant to
make it seem like the State=s
witnesses were lying though other evidence suggested
otherwise.  In its proper context, the
State=s
statement that Ahe knows
that other things exist which only support the truth@
was a reasonable answer to defense counsel=s
statements during its closing argument. 
A prosecuting attorney is permitted in his argument to draw from the
facts in evidence all inferences which are reasonable, fair, and legitimate,
but he may not use the jury argument to get before the jury, either directly or
indirectly, evidence which is outside the record.  Borjan v.
State, 787 S.W.2d 53, 57 (Tex.Crim.App. 1990), citing
Jordan v. State, 646 S.W.2d 946, 948 (Tex.Crim.App.
1983).  In light of the entire argument,
it is clear that the State was making reference to Aother@ evidence already before the jury,
which controverted or supported a different inference
than defense counsel=s
theory that the State=s
witnesses were lying or at the least, not credible.  Even assuming that the prosecutor=s jury argument was improper, the
complained-of argument fails to rise to the level of reversible error as it was
not manifestly improper nor did it inject new and harmful facts into
evidence.  See Wesbrook,
29 S.W.3d at 115. 
Moreover, in view of the entire argument, the complained-of argument
would not have caused the jury to speculate as to the existence of Aother damaging@
evidence.  We overrule Issues Twenty-Two
through Twenty-Five.

 

 








Having overruled
all of Appellant=s issues
for review, we affirm the trial court=s


judgment.

 

 

July
17, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
The first time Appellant Jose Barajas=
appeal of his conviction was before this Court, we sustained Appellant=s first three issues for review without
addressing his remaining issues.  We need
not address Appellant=s
fourth issue on appeal as it pertains to the trial court=s
ruling on improper questioning of the venire members, which the Court of
Criminal Appeals found not to be an abuse of discretion.  Issue Four is overruled.  The Court of Criminal Appeals has overruled
Appellant=s Issues
One through Three.  Therefore, we now
consider Appellant=s
remaining twenty-one issues for review.





[2]Appellant
appeals under both the Texas and United States Constitutions, but fails to
point out any distinction between the confrontation clauses of the federal and
Texas Constitutions.  See Lagrone v. State, 942 S.W.2d 602, 612 (Tex.Crim.App. 1997), cert. denied, 522 U.S. 917, 118
S.Ct. 305, 139 L.Ed.2d 235 (1997).  We therefore consider Appellant=s state and federal claims in a joint
analysis without distinction.





[3]The
State in this cause had filed a motion in limine,
requesting that defense counsel inter alia
approach the bench before mentioning or alluding to proceedings involving
Appellant and Nancy Barajas in front of the jury.  The trial court granted the State=s motion,
therefore defense counsel was requesting permission to cross-examine the State=s witnesses about the divorce and child
support litigation proceedings pursuant to the court=s
order.  





[4]We
observe the trial court did not expressly restrict cross-examination on
relevancy grounds, though the trial judge did question whether
cross-examination concerning the divorce proceedings was necessary and remarked
that the divorce itself had nothing to do with C.B.=s outcry under one of defense counsel=s theory.  A review of the record shows that the trial
court apparently based its ultimate decision on Texas Rule of Criminal Evidence
403, after balancing the prejudicial nature and probative value of the
proffered testimony.  





[5]
At the time of Appellant=s
trial in September 1997, the Texas Rules of Criminal Evidence applied.  Effective March 1, 1998, the Texas Rules of
Criminal Evidence and Texas Rules of Civil Evidence were merged to form the
Texas Rules of Evidence.  Rule 403 of the
Rules of Evidence is the same as former Rule 403 of the Rules of Criminal
Evidence.  Thus, the scope and
application of the new rule would be the same as under the old one.  Nevertheless, we will apply the former Texas
Rules of Criminal Evidence since this case was tried before the effective date
of the new rules.





[6]
Former Rule 803(5) of the Texas Rules of Criminal Evidence provided a hearsay
exception for:

 

A memorandum or record concerning a matter about which a
witness once had personal knowledge but now has insufficient recollection to
enable him to testify fully and accurately, shown to have been made or adopted
by the witness when the matter was fresh in his memory and to reflect that
knowledge correctly, unless the circumstances of preparation cast doubt on the
document=s
trustworthiness.  If admitted, the
memorandum or record may be read into evidence but may not itself be received
as an exhibit unless offered by an adverse party.  





[7]
Former Rule 405(a) of the Texas Rules of Criminal Evidence provided in
pertinent part: 

 

In all cases in which evidence of
character or trait of character of a person is admissible, proof may be made by
testimony as to reputation or by testimony in the form of an opinion.  Provided however that to be qualified to
testify concerning the character or trait of character of an accused, a witness
must have been familiar with the reputation, or with the underlying facts or
information upon which the opinion is based, prior to the day of the offense.

 

See Tex.R.Crim.Evid. 405(a)(Repealed).  The
merger of the rules of evidence in civil and criminal cases did not result in a
substantive change to character evidence offered in the guilt-innocence stage, however, we will apply Rule 405(a) of the Texas Rules
of Criminal Evidence since Appellant=s
case was tried before the consolidated rules of evidences went into effect.





[8]Former
Rule of Criminal Evidence 403 contains identical language as Rule of Evidence 403, however, we will refer to the former rule in addressing
Appellant=s
argument because his case was tried prior to the consolidation of the Rules of
Evidence.  





[9]Apparently,
this was a reference to a prospective juror who during voir
dire could not remember certain details about the day he graduated from
college.  The prosecutor had earlier
recalled to the jury the State=s
remark during voir dire that Mr. Martin=s failure to remember all the small
details from an event years ago did not mean he was lying.