**Wendell B. HOUSE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–92–01106–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 28, 1995.

---

Jerry D. Patchen, Henry L. Burkholder, III, Houston, for appellant.

Rikke Burke Graber, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

### MAJORITY OPINION

EDELMAN, Justice.

Wendell B. House appeals his conviction for involuntary manslaughter on the grounds that: (1) evidence of extraneous offenses was improperly admitted; (2) other prosecutors were allowed to testify as reputation witnesses; and (3) the State did not establish that its reputation witnesses learned of appellant's reputation from people in appellant's community. We affirm.

On May 1, 1991, James Ebert informed his friend and neighbor, Nathan McLaren, that Don Miles was going to pay him $1,500.00 to burn down appellant's custom automobile business. Ebert asked McLaren if he would help, but McLaren refused. About two weeks later, Ebert confirmed to McLaren that he burned down the business.

On June 15, 1991, appellant learned that Ebert started the fire. Ebert and McLaren decided to turn Miles in, and split the reward money appellant was offering for information. McLaren met with appellant, and told him that Miles paid Ebert to start the fire. He asked appellant to inform the police about Miles, but not Ebert. Appellant refused.

On July 22, 1991, Ebert went to appellant's used car lot. Ebert and appellant got into a fight, which ended in Ebert being fatally shot. Appellant was charged with and convicted of involuntary manslaughter, and the jury assessed punishment at twelve years imprisonment.

In the first two of his thirteen points of error, appellant argues that the State's introduction of extraneous offense evidence was improper impeachment on a collateral issue.

In the prosecutor's cross-examination of appellant concerning the reason Miles would want appellant's business burned down, the following exchange occurred:

Q: Isn't the real reason you knew Donald Lee Miles was involved and you all of a sudden saw the picture clear up because you were involved with Donald Lee Miles in the cocaine running business. Isn't that the reason?

A: No, ma'am. That's a lie.

[DEFENSE COUNSEL]: I object to this inflammatory extraneous allegation.

THE COURT: No, sir. Overruled.

Later in that cross-examination, the following exchange occurred:

Q: Have you ever heard or in anyway been involved in the cocaine dealing being done out of the Toy Store, sir?

A: Not none whatsoever. None at all.

Q: Not at all?

A: Not at all.

[DEFENSE COUNSEL]: Your, Honor, I object to the prosecutor inserting inflammatory and extraneous information before the jury.

THE COURT: Denied. Overruled.

In order to preserve error for appellate review, a party must object as soon as the ground of objection becomes apparent.

*Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim.App.1990). If an objection is not made until *after* the question has been answered, and the defendant can show no legitimate justification for the delay, the objection is waived. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex.Crim.App.1995). Furthermore, an objection is required every time inadmissible evidence is presented. *Johnson*, 803 S.W.2d at 291. Any error in allowing inadmissible evidence is cured when the same evidence comes in without objection elsewhere in trial. *Id.*

Here, appellant's trial counsel did not object until *after* appellant answered the questions about his alleged drug trafficking. In the second exchange, appellant even answered *twice* before defense counsel objected. Furthermore, appellant later answered two similar questions without objection. Because appellant did not timely object to the questions complained of, and because similar evidence came in later without objection, appellant waived error on this contention.

However, even if error had been preserved, the questions were proper impeachment. A witness generally may not be impeached on a collateral matter which the cross-examining party would not be entitled to prove as part of his case. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex.Crim.App. 1990). However, "when an accused testifies gratuitously as to some matter that is irrelevant or collateral to the proceeding, as with any other witness he may be impeached by a showing that he has lied or is in error as to that matter." *Hammett v. State*, 713 S.W.2d 102, 105 (Tex.Crim.App.1986).[1] The permissible inference "is that if the accused lied or was in error about a collateral matter (especially one implicating his aptitude for getting in trouble with the law), he is also likely to have lied or been in error in the balance of his testimony...." *Id.* at 105–106.[2]

---

1. However, the State cannot bootstrap its way to such impeachment by eliciting the offending statement on cross-examination, then contradicting it. *Hammett*, 713 S.W.2d at 105 n. 4.

2. This rule has been applied as an exception to Tex.R.Crim.Evid. 608(b) and 609(a), restricting admission of prior unadjudicated extraneous offenses and convictions, respectively, where the

accused creates a false impression of his law-abiding behavior. *See, e.g., Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993); *Prescott v. State*, 744 S.W.2d 128, 130–31 (Tex.Crim.App.1988). However, the exception has also been applied where the accused testifies about other collateral matters. *See, e.g., Cunningham v. State*, 815 S.W.2d 313, 319–20

In this case, the record does not clearly establish whether appellant's relationship with Miles and their alleged drug-related activity may have been relevant, such as regarding motive, to whether he intentionally caused Ebert's death. However, even if it were only collateral, appellant testified gratuitously on direct examination that he did not know why Miles, whom he had generously supported financially,[3] would want to destroy appellant's business. In response, the State sought to impeach appellant's credibility by showing that he *did* know why Miles would want to do so. Appellant "opened the door" to this cross-examination by his testimony on direct examination. *See Hammett,* 713 S.W.2d at 105 n. 4. Thus, appellant's first two points of error are overruled.

■ In his third and fourth points of error, appellant complains that the trial court erred by allowing two assistant district attorneys from the trial prosecutor's office to testify about appellant's character during the punishment phase. Appellant claims that this was prohibited by TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 (1989), *reprinted in* TEX.GOV'T CODE ANN. tit. 2, subtit. G app. (Vernon Supp.1992) (STATE BAR RULES art. X, § 9).

Rule 3.08 provides that a lawyer shall generally not accept or continue employment in an adjudicatory proceeding if he believes that he may be a necessary witness to establish an essential fact on behalf of his client. In this context, the principal concern is the possible confusion for the trier of fact as to whether statements by an advocate-witness should be taken as evidence or argument.

TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 4 (1989).

However, Rule 3.08 is an ethical standard, and is not well suited as a standard for procedural disqualification. TEX.DISCIPLINARY R. PROF.CONDUCT 3.08 cmt. 9 (1989). In addition, it should not be used as a tactical weapon. TEX.DISCIPLINARY R.PROF.CONDUCT 3.08 cmt. 10 (1989).

Moreover, there has been variation in the authoritative weight accorded to the disciplinary rules. *Compare Pannell v. State,* 666 S.W.2d 96, 98 (Tex.Crim.App.1984) (former disciplinary rules are not laws of the State; violation of those rules in obtaining evidence does not bar introduction of that evidence at trial; instead, ethical violations are to be dealt with administratively); *with Warrilow v. Norrell,* 791 S.W.2d 515, 519 (Tex.App.— Corpus Christi 1989, writ denied) (rules governing State Bar and Texas Rules of Civil Procedure each have same force and effect upon matters to which they relate).

Most importantly, however, Rule 3.08 operates to disqualify lawyers from acting as counsel, not as witnesses. We have neither been cited nor found any authority in which a lawyer was disallowed from testifying in a case by reason of Rule 3.08. Under these circumstances, we are without an adequate basis to conclude that the trial court erred in refusing to exclude testimony of the assistant district attorneys based on the alleged violation of Rule 3.08.[4] Appellant's third and fourth points of error are overruled.

■ In his fifth through thirteenth points of error, appellant claims that the trial court erred in allowing the testimony of eight of

---

(Tex.App.—Dallas 1991, no pet.) (by denying that he had tried to sell drugs to testifying police officer, appellant opened door to impeachment by officer's testimony concerning two prior unadjudicated drug offenses); *Barrera v. State,* 491 S.W.2d 879, 880–81 (Tex.Crim.App.1973) (by denying he had ever seen testifying police officer before, appellant opened door to impeachment by officer's testimony of his prior arrest of appellant); *Lester v. State,* 498 S.W.2d 927, 930 (Tex. Crim.App.1973) (by testifying he had never had marijuana on his person, appellant opened door to impeachment by testimony of witness that he had smoked marijuana with appellant on night in question and had seen appellant in possession of marijuana on previous occasions).

3. Appellant testified that: he gave Miles $5,000 to start an auto salvage shop for one-third ownership of the business; when Miles needed more money, appellant gave him an additional $8,000 in exchange for a security interest in the equipment; and, when the business failed, Miles turned over his equipment without anger, and even helped appellant move it. Consequently, appellant testified that he was "shocked" to learn that Miles was behind the fire.

4. Nor would any such error have been harmful since, as appellant noted, the testimony was merely cumulative.

the thirteen law enforcement officers who testified as to appellant's bad reputation, as provided in Tex.R.Crim.Evid. 405.[5] Appellant contends that the State failed to prove that those witnesses obtained their information from a cross-section of appellant's community.

A reputation witness' testimony must be based on discussion with others about the defendant, or on hearing others discuss the defendant's reputation, and not just on personal knowledge. *Turner v. State*, 805 S.W.2d 423, 429 (Tex.Crim.App.1991). Discussions with other police officers are sufficient to qualify a witness on reputation. *Id.* However, reputation testimony may not be grounded solely on the officer's knowledge of specific acts. *Wagner v. State*, 687 S.W.2d 303, 313–14 (Tex.Crim.App.1984).

In this case, each of the eight witnesses in question testified that appellant's reputation for being a peaceful and law abiding citizen was bad. They further testified that they learned of this reputation by talking with other law enforcement officers from various agencies, as well as confidential informants. Thus, as in *Turner*, the reputation witnesses here established that they based their opinions on conversations with several people, and not just on their knowledge of a specific act, such as the charged crime. We find that this reputation testimony was properly admitted. Accordingly, appellants fifth through thirteenth points of error are overruled, and the judgment of the trial court is affirmed.

LEE, Justice, concurring.

I agree that the judgment of the trial court should be affirmed. Accordingly, with the following comments, I concur.

In appellant's first and second point of error, he contends that the state was improperly allowed to introduce extraneous offense evidence. The majority holds that appellant waived any error because he did not timely

object to the prosecutor's questions. In order to preserve a complaint for appellate review, a party must present a timely, specific objection to the trial court. Tex.R.App.P. 52. In order for an objection to be timely, it must be raised "at the earliest opportunity," or "as soon as the ground of objection becomes apparent." *Zimmerman v. State*, 860 S.W.2d 89, 100 (Tex.Crim.App.1993), *vacated on other grounds*, ⸺ U.S. ⸺, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993) (plurality op.) (quoting *Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 685 (Tex.Crim.App. 1991)). A timely, specific objection is required to allow the trial court an opportunity to rule on the complaint and correct any error that may have occurred. This allows the trial to proceed under the proper procedural and substantive rules. *Janecka v. State*, 823 S.W.2d 232, 243–44 (Tex.Crim.App. 1992) (op. on reh'g); *Meyers v. State*, 865 S.W.2d 523, 524 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). When confronted with a waiver question, the Court of Criminal Appeals has warned courts of appeals to not "split hairs." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App.1992). Accordingly, we are to reach the merits of a complaint "without requiring that the parties read some special script to make their wishes known." *Id.*

In the current case, it is clear from the portion of the statement of facts included in the majority's opinion, that the trial court was afforded an opportunity to rule on appellant's objection. *See Zimmerman*, 860 S.W.2d at 103, 104 (Baird J., concurring). It is also difficult to discern how appellant's trial counsel could have objected any earlier. However, recently, in *Dinkins v. State*, 894 S.W.2d 330 (Tex.Crim.App.1995), the Court of Criminal Appeals determined in a factually similar case that Dinkins failed to timely object. In that case, Dinkins complained of

---

5. Rule 405 reads, in pertinent part:

(a) **Reputation or Opinion.** In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. Provided

however that to be qualified to testify concerning the character or trait of character of an accused, a witness must have been familiar with the reputation, or with the underlying facts or information upon which the opinion *is* based, prior to the day of the offense.

allegedly speculative questioning by the prosecutor. The court determined that his objection was not timely because he did not object until after the witness answered the state's questions. In addition, Dinkins failed to offer an explanation of why he did not object before the witness answered the questions. The court stated:

> An objection should be made as soon as the ground for objection becomes apparent. In general, this occurs when the evidence is admitted. Therefore, if a question clearly calls for an objectionable response, a defendant should make an objection before the witness responds. If he fails to object until after an objectionable question has been asked and answered, *and he can show no legitimate reason to justify the delay,* his objection is untimely and error is waived.

*Id.* at 355 (emphasis added). The court determined it was apparent when the questions were asked that they called for a speculative answer. Thus, because Dinkins did not object before the witness answered the questions **and** he did not offer an explanation why he did not timely object, the court determined he had waived any error and overruled his points of error.

Appellant similarly complains of questions that were objectionable when asked. He also did not object until after the questions were answered or offer an explanation why he did not object earlier. While I believe that the issue was sufficiently placed before the trial court, we are bound by the decisions of the Court of Criminal Appeals. The Court of Criminal Appeals' decision in *Dinkins* is indistinguishable from our current case. Accordingly, appellant waived any error by failing to object until after he answered the prosecutor's questions.

In addition, I am skeptical that the majority is correct that if the error had been preserved, the questioning was proper. The credibility of a witness may be attacked with evidence that the witness has been convicted of a felony or a crime of moral turpitude if the trial court determines that the probative value of admitting this evidence outweighs its prejudicial effect. TEX.R.CRIM.EVID. 609; *Delk v. State,* 855 S.W.2d 700, 704 (Tex.Crim.

App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993). As with any other witness, generally an accused cannot be impeached with a charged offense unless the charges resulted in a final conviction which would be admissible under rule 609. *Prescott v. State,* 744 S.W.2d 128, 130 (Tex.Crim.App.1988); *Hammett v. State,* 713 S.W.2d 102, 105 (Tex.Crim.App.1986). An exception to this rule applies when a witness makes statements suggesting that he has never been arrested, charged or convicted of any offense. *Delk,* 855 S.W.2d at 704; *Prescott,* 744 S.W.2d at 131; *Hammett,* 713 S.W.2d at 105. "Where the witness creates a false impression of law abiding behavior, he 'opens the door' on his otherwise irrelevant past criminal history and opposing counsel may expose the falsehood." *Delk,* 855 S.W.2d at 704.

The state contends that appellant's statements on direct examination "opened the door" to this limited exception so that it could impeach him with allegations of extraneous offenses. I disagree. The exception is intended for those instances where the accused incorrectly testifies that he has never been "in trouble." In those circumstances, the state is justified in dispelling the false impression. Thus, the law allows the state to delve into an area that is otherwise irrelevant, collateral and, therefore, inadmissible. *See Prescott,* 744 S.W.2d at 131.

In the current case, appellant testified during direct examination that he had no idea why Miles would want to destroy his business. The statement does not leave a false impression with the jury (or even suggest) that he has been a law abiding citizen. *See Hammett,* 713 S.W.2d at 105. Rather, appellant's testimony only indicates that he was not aware of any reason why Miles would arrange the destruction of his business. Because appellant's statement was not a statement "concerning his past conduct that suggested[ed] he ha[d] never been **arrested, charged or convicted of any offense,**" it is my belief that the prosecutor's question does not fall within the limited exception relied upon by the state. *See Delk,* 855 S.W.2d at 704.

Furthermore, the state argues that the questions were proper because it was attempting to "impeach and rebut" appellant's testimony that he did not know why Miles would want to destroy his business. Implicit in the majority's holding is an assumption that appellant and Miles being "in the cocaine business" necessarily gave Miles a motive to destroy appellant's business. The questions asked by the prosecutor do not indicate or suggest any animosity between Miles and appellant. The questions in no way "impeach or rebut" appellant's testimony. Rather, I believe, the questions were irrelevant and an impermissible attempt by the prosecutor to present other bad acts. *See* TEX.R.CRIM.EVID. 404; *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990) (op. on reh'g).

With these comments, I concur that appellant's first and second points of error should be overruled.