11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

Willie Charles Wyatt

Appellant

Vs.                   No.
11-02-00170-CR B Appeal from Taylor County

State of Texas

Appellee

 

The jury
found appellant guilty of sexual assault of a child (first count) and indecency
with a child (second count).  The trial
court assessed appellant=s punishment for each offense at 18 years confinement.  Appellant appeals.  We affirm.

The record
reveals that appellant performed oral sex and other unlawful sexual acts on the
victim who was a 16-year-old, mentally retarded male child.  At the time of the sexual assault,
appellant, a male, was a cross-dresser and was dressed, as he was frequently
dressed, as a female.  Appellant
testified that he did not commit the offenses. 
The sufficiency of the evidence is not challenged.

In his
first issue, appellant contends that the trial court erred in denying his
motion to suppress evidence of a suggestive pretrial identification procedure
and an in-court identification that was impermissibly tainted.  We disagree.

An
in-court identification is inadmissible if tainted by an unduly suggestive
pretrial photographic identification. 
Loserth v. State, 963 S.W.2d 770, 771-72 (Tex.Cr.App.1998).  The appropriate rules to be followed are
stated in Ibarra v. State, 11 S.W.3d 189, 195-96 (Tex.Cr. App.1999):

The test is whether, considering the totality
of the circumstances, Athe
photographic identification procedure was so impermissibly suggestive as to
give rise to a very substantial likelihood of irreparable misidentification.@ 
Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d
1247 (1968); see also Madden v. State, 799 S.W.2d 683, 695 (Tex.Crim.App.1990),
cert. denied, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991).  Reliability is the critical question:

 








[I]f the totality of the circumstances
reveals no substantial likelihood of misidentification despite a suggestive
pretrial procedure, subsequent identification testimony will be deemed Areliable,@ Areliability [being] the linchpin in
determining the admissibility of identification testimony.@

 

Webb v. State, 760 S.W.2d 263, 269
(Tex.Crim.App.1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3202, 105
L.Ed.2d 709 (1989)(quoting Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53
L.Ed.2d 140 (1977)).  The following five
non-exclusive factors should be Aweighed against the corrupting effect of any suggestive identification
procedure in assessing reliability under the totality of the circumstances@:  (1)
the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness= degree of attention; (3) the accuracy of the
witness= prior description of the criminal; (4) the
level of certainty demonstrated by the witness at the confrontation; and (5)
the length of time between the crime and the confrontation.  Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct.
375, 34 L.Ed.2d 401 (1972); see also Brathwaite, supra; Webb, supra.  We consider the five Biggers factors,
all issues of historical fact, deferentially in a light favorable to the trial
court=s ruling. 
The factors, viewed in this light, are then weighed de novo
against Athe corrupting effect@ of the suggestive pretrial identification
procedure.  Loserth v. State, 963 S.W.2d
770, 773-74 (Tex.Crim.App.1998).

 

The victim
testified that, when he was in the Wal-Mart parking lot, appellant, who was
dressed like a woman, gave the victim $10 and asked the victim if he wanted to
have sex.  The victim went with
appellant to an upstairs apartment. 
During the sexual activities, the victim discovered that appellant was
male, not female.  When he left the
apartment, the victim returned to the Wal-Mart parking lot.  

The victim=s mother testified that the victim was A[t]rainable mentally retarded.@  She
stated that she got worried about the victim on October 6, 2001, because he had
not come home.  The mother went to the
Wal-Mart parking lot, and she saw the victim who Awas white as a ghost@ coming across a pasture toward the parking lot.  The victim told his mother that a Ablack woman raped [him].@  

The victim
did not tell anyone that the Awoman@ was a Aman@ until shortly before trial when the victim
told his counselor.  The victim stated
that he was afraid to tell that the woman was in fact a man because he did not
want to be called a Aqueer.@  At
trial, the victim identified appellant as the person who performed the various
sexual acts on the victim.








James
David Atkins, a detective with the Criminal Investigation Division of the
Abilene Police Department, testified that on October 24, 2001, at the time of
the photo lineup, he was focusing on appellant and that he attempted to find
photographs of people that looked similar to appellant.  Detective Atkins testified that he only
showed the lineup one time to the victim. 
Appellant=s picture was Photograph No. 3.  Detective Atkins testified:

Q: Do you
recall if he initially focused on picture number three or if he looked at all
of the pictures or how that went?

 

A: He took
time by looking at the entire line up before he made the identification that
the person in number three was the person that he was accusing of the offense.

 

Q: And as
far as you can recall did he seem to be sure?

 

A: Yes,
sir.

 

Q: And did
he indicate that any of the others might be the person?

 

A: No,
sir.

 

Photographs
Nos. 1 and 3 were police booking photographs of men who were cross-dressers and
were dressed as women.  Photograph No. 3
was a photograph of appellant.  The
other four people in the lineup were women dressed as women.  Detective Atkins explained that it would not
have been fair to put appellant=s picture in a lineup with men and that he put appellant=s picture in a Aline up with women because that=s what he was dressed as at the booking time.  That is what our victim knew him as was a woman.@ 
Detective Atkins, who had known appellant for four or five years, stated
that, in the photo identification, he had appellant in Athe same form of dress that you would have
seen him out in the public.@  Detective Atkins stated that
they did not have enough photographs of cross-dressers to make a lineup of just
cross-dressers.

Tamara
Claybrook testified that the victim had physical defects and that, when the
victim was attempting to describe the height of appellant, the victim was just
trying to guess between the heights of two people.

The record
reflects that the trial court looked at the photo lineup and asked:  AWhich one is a man?@








We hold
that no substantial risk of irreparable misidentification was created so as to
deny appellant due process.  Appellant=s contention that the lineup violated the
14th Amendment of the U.S. Constitution and Article I, ' 13 of the Texas Constitution is
overruled.  Appellant=s first issue is overruled.

Appellant
asserts in his second issue that the trial court erred in permitting the State
to present evidence of an extraneous bad act to impeach appellant on a
collateral matter.

Appellant
testified that he had had oral sex with partners but that he had always made
them aware of his HIV high risk infection. 
Appellant stated that, while in jail, he performed oral sex on a person
named AChuck@ but that he explained his condition to the person.  Appellant stated that he always warned his
sexual partners.

The State,
on rebuttal, called Ryan Roberts, who went by the name of AChuck,@ who testified that, while he shared a jail cell with appellant in
December of 2001, appellant performed oral sex on Roberts.  Roberts stated that appellant did not tell
him that he might be HIV positive or that appellant had hepatitis.  Before Roberts testified, the trial court
instructed the jury, at the request of appellant, that the testimony of the
next witness, Roberts, was being offered by the State solely to impeach the
testimony given by appellant.

Appellant
cites Ramirez v. State, 802 S.W.2d 674, 676 (Tex.Cr.App.1990), and argues that
whether or not appellant advised his sexual partners about his HIV status was a
collateral matter and that the trial court erred in permitting the State to
impeach appellant on a collateral issue. 
The court in Ramirez noted the exception to the general rule
prohibiting impeachment on a collateral matter.  The court said:

There is,
however, an exception to the general rule that a party is not entitled to
impeach a witness on a collateral matter. 
When a witness leaves a false impression concerning a matter relating to
his or her credibility, the opposing party is allowed to correct that false
impression.

 

Appellant gratuitously
offered the testimony that he always warned his sexual partners regarding his
HIV status.  The State did not Abootstrap@ its right to impeach appellant by eliciting from appellant his
statement regarding his warnings to his sexual partners.  Appellant gratuitously made the statement
and presented a false impression.  The
court in Hammett v. State, 713 S.W.2d 102, 105-06 (Tex.Cr.App.1986), stated:








[T]he Court has essentially fashioned a rule
that when an accused testifies gratuitously as to some matter that is
irrelevant or collateral to the proceeding, as with any other witness he may be
impeached by a showing that he has lied or is in error as to that
matter....Should the accused nevertheless falsely insinuate during his direct
examination that he has never been Ain trouble,@ the
State may expose that falsehood just as it may any other falsely asserted
collateral matter.  The inference that
is permissible from such exposure is that if the accused lied or was in error
as to a collateral matter (especially one implicating his aptitude for getting
in trouble with the law), he is likely to have lied or been in error in the
balance of his testimonyBthose aspects of his testimony that are relevant to material
issues in the case.  This is a proper
impeachment function.  (Emphasis in
original)

 

See
also Delk v. State, 855 S.W.2d 700 (Tex.Cr.App.1993); Turner v. State, 4 S.W.3d
74 (Tex.App. - Waco 1999, no pet=n); R.X.F. v. State, 921 S.W.2d 888 (Tex.App. - Waco 1996, no pet=n); House v. State, 909 S.W.2d 214 (Tex.App.
- Houston [14th Dist.] 1995, no pet=n); Cunningham v. State, 815 S.W.2d 313 (Tex.App. - Dallas 1991, no pet=n).

The testimony of Roberts was relevant to appellant=s credibility as a witness.  Appellant=s second issue is overruled.

The judgment of the trial court in each offense is affirmed.

 

AUSTIN McCLOUD

SENIOR JUSTICE

 

January
30, 2003

Do
not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot,
C.J., and

Wright, J., and McCloud,
S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.