



## MEMORANDUM OPINION

No. 04-08-00811-CR

Rosalio **RETA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2006-CRN-000951-D1
Honorable Jose Joe Lopez, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:      Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:  March 3, 2010

AFFIRMED

Appellant Rosalio Reta was convicted by a jury for the murder of Noe Flores and was sentenced to a term of forty years confinement.  On appeal, Reta raises issues relating to erroneously admitted evidence, improper jury argument, and factually insufficient evidence.  We affirm the judgment of the trial court.

**BACKGROUND**

Based on Reta's allegation that the State's evidence is purely circumstantial, a detailed review of the facts is necessary. On January 8, 2006, Noe Flores was standing outside of Mike Lopez's house in Laredo, Texas when a small car passed slowly, firing multiple shots, and killing Flores. Neighbor Isais Escobedo testified to hearing "ten or eleven gunshots" and then "tires screeching." Alex Gomez also testified to being at Lopez's house during the shooting. Gomez saw the small car drive away, stop, "three guys" got out of the small car, and then they left in another vehicle waiting nearby. The small car seen leaving the scene of the shooting was abandoned and later identified as a 1991 Nissan Sentra.

The State alleged the "three guys" consisted of: (1) Gabriel Cardona, who subsequently pled guilty to the murder in question; (2) Jesse Gonzales, who was also under indictment for the murder; and (3) Reta. Webb County Jail records classified both Reta and Cardona as registered members of the Zetas, a known gang organization in Laredo. Additionally, a pack of cigarettes found in the abandoned Sentra contained fingerprints matching those of Reta.

The murder investigation began with a receipt, also found in the Sentra, for the purchase of additional minutes for a Boost cellular phone. In order to trace the receipt to the occupants of the car, the officers subpoenaed the phone records associated with the phone number on the receipt. One of the Laredo phone numbers was registered to Jesus Rodriguez's place of business. Jesus testified that he sold the Sentra to an individual on January 7, 2006, the day before the shooting occurred. The buyer told Jesus to leave the Sentra in a grocery store parking lot, with a "bottle of water on the top of the car," and the keys under a rock. Jesus noted he had never conducted business in this manner before, but nonetheless complied with the instructions.

Jesus provided the phone number of the buyer and also connected officers with Chester's Tattoo Parlor. A review of the cellular phone of the tattoo artist at Chester's revealed the buyer of the Sentra as "Bart." A few days later, an individual identifying himself as "Bart" called Detective Robert Garcia, threatened him, and told him to back off the murder investigation. Reta was subsequently identified as the voice of "Bart."

Interviews of fellow Zeta gang members, David Martinez-Cerezo and Lucio Perez-Quintero, a.k.a. "El Viejon," provided further connections. El Viejon's cellular phone included Zeta associates Reta, Cardona, "Jesse" Gonzalez, and Miguel Trevino, a.k.a. "Comandante Cuarenta." At trial, Martinez-Cerezo testified that he began working for El Viejon as a member of a group of assassins operated by the Gulf Cartel. He stated that El Viejon took orders from Comandante Cuarenta. El Viejon would pay assassins in cash and cocaine for eliminating a target. Martinez-Cerezo testified that the modus operandi of the Gulf Cartel assassins was to abandon the car used in the shooting and drive to a safe house in another car. He said Reta was a member of a *sicario* (or hitman) cell stationed in Laredo. Martinez-Cerezo testified that he saw Reta return to the safe house on the night of Flores' murder, that Reta spoke about his participation in the assassination, and that he personally knew Reta received payment for his involvement, of approximately $50,000.00.

In July, Drug Enforcement Agent Chris Diaz received a phone call from Reta stating he was being detained in Mexico. Reta said he feared for his life and requested extradition from Mexico to stand charges. While in an interrogation room at the Laredo Police Department, Reta placed a cellular phone call to his girlfriend Stephanie Guerra in which he made the following statements: "I am going to be locked up for a while." "Gabriel is blaming me for everything."

"He put the finger on everybody, on Wency, Jesse, on everybody. Even the Commander." Reta was subsequently indicted and found guilty of murder.

### EVIDENCE OF EXTRANEOUS ACTS

Reta's first issue on appeal concerns evidence of other crimes, wrongs, or acts allegedly admitted in violation of Texas Rules of Evidence 402, 403, and 404. An appellate court reviews a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). As long as the trial court's ruling was within the zone of reasonable disagreement, we will not interfere with the ruling. *Id.* Evidence which is not relevant is inadmissible. TEX. R. EVID. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). It may, however, be admissible for other purposes, such as proof of motive or identity. *Id.*

An extraneous offense may be admissible to show identity only if identity is at issue in the case. *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). The trial judge has considerable latitude in determining that identity is, in fact, disputed. *Id.* It may be placed in dispute by cross-examination as well as by affirmative evidence offered by the defense. *Id.* Evidence of extraneous acts of misconduct may be admissible if (1) the uncharged act is relevant to a material issue in the case, and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect. *Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008), cert. denied, 130 S. Ct. 53 (U.S. Oct. 05, 2009). Additionally, although proof of motive is not a required element in criminal cases, "evidence of motive is one kind of evidence [that aids

in] establishing proof of an alleged offense." *Crane v. State*, 786 S.W.2d 338, 349-50 (Tex. Crim. App. 1990). For evidence of motive to be admissible, the evidence must tend to raise an inference that the accused had a motive to commit the alleged offense for which he is on trial. *Bush v. State*, 628 S.W.2d 441, 444 (Tex. Crim. App. 1982); *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex. Crim. App. 1972).

Reta objected to the admittance of the redacted transcript of a legally wiretapped phone conversation on April 11, 2006 between himself and Cardona. In the conversation, Cardona says to Reta, "I already have the [target], so if you want you can tell the Comandante and come here and you do this job." The transcript of the conversation references the cocaine and cash that Reta is waiting to be paid from Cardona. The transcript goes on further to say they "are just hiding" and "once we go out that's it. Bang, bang, bang, bang. We do the action, bang, they leave, and that's it."

The State argues the evidence was relevant to the issues of identity and motive, as well as for rebuttal to Reta's defensive theory. The State suggests that Reta raised the issue of identity through cross-examination of (1) the fingerprint expert, by suggesting an error in his analysis, and (2) eye witnesses, regarding the lack of identification of Reta at the scene. The State had to provide evidence beyond a reasonable doubt that Reta acted with the intent to assist in the commission of the murder. Therefore, the evidence of Reta's payment for the commission of the murder, as well as the association with the Zeta assassins, was relevant to show Reta assisted in the murder and his intent to do so. *See Gosch v. State*, 829 S.W.2d 775, 783 (Tex. Crim. App. 1991) ("evidence demonstrating the accused's motive is admissible if it is relevant as a circumstance tending to prove the commission of the offense"); *Etheridge v. State*, 903 S.W.2d 1, 11 (Tex. Crim. App. 1994). Accordingly, the trial court did not err in admitting the transcript

of Reta's conversation with Cardona because it was highly probative to establish a motive and identity for participating in the murder. Reta's first issue is overruled.

## HEARSAY

In his second issue on appeal, Reta argues the testimony of Detective Garcia constituted hearsay evidence. Detective Garcia testified that the Boost mobile phone receipt located in the abandoned Sentra, and the subsequently subpoenaed phone records, led him to identify a criminal association between Reta, Cardona, and Gonzalez. Reta complains that Detective Garcia's testimony was based on phone records that were not introduced into evidence. Reta asserts the testimony regarding phone numbers listed on the call logs of the cellular phone constitutes hearsay evidence. Further, Reta argues that because the State failed to file a business records affidavit, the evidence was inadmissible. *See* TEX. R. EVID. 902(10).

Detective Garcia testified at length as to how the cellular phone numbers contained in the Boost records led him first to Jesus, the seller of the Sentra involved in the murder, and subsequently connected him to other individuals in the gang. Although counsel objected to some of the testimony from Detective Garcia "regarding the phone records" on grounds of hearsay, multiple references to the numbers came in without objection. Detective Garcia's testimony is lengthy, and he refers multiple times to the use of the records to track down the individuals involved. For example, he stated that "from the same toll records that I examined . . . there was calls going to a tattoo parlor under Chester's Tattoos." He continues that based on his conversation at the tattoo parlor, he identified "Bart" as the buyer of the Sentra. Because a party waives error regarding improperly admitted evidence if the same evidence is later admitted without objection, we find this point inadequately preserved for our review. *See House v. State*, 909 S.W.2d 214, 216 (Tex. App.—Houston [14th Dist.] 1995), *aff'd*, 947 S.W.2d 251 (Tex.

Crim. App. 1997) (stating any error in allowing inadmissible evidence is cured when the same evidence comes in without objection elsewhere in trial).

Moreover, the phone numbers at issue were listed on a demonstrative chart used by the State to illuminate Detective Garcia's testimony regarding the steps of his investigation. This exhibit was placed in front of the jury for the length of Detective Garcia's testimony regarding his investigative process. The chart referenced the telephone numbers and links to known gang members. The chart was admitted into evidence over an objection based on relevance. However, "[t]he ground of error presented on appeal must be the same as the objection raised at trial." *Bouchillon v. State*, 540 S.W.2d 319, 322 (Tex. Crim. App. 1976). Accordingly, the hearsay objection to Detective Garcia's testimony about connections between telephone numbers and the investigation is waived. We overrule Reta's second issue.

### IMPROPER JURY ARGUMENT

Reta next argues that the prosecutor's comments on Reta's failure to testify violated his right to silence under the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution. U.S. CONST. amend. V; TEX. CONST. art. 1, § 10. It is, without question, improper for the State to make a comment on a defendant's failure to testify. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). Reta claims the prosecutor improperly stated that "we keep hearing, 'well, Reta wasn't there, Reta wasn't there,' but nobody took the stand to tell you where he was that night." However, when Reta's defense counsel objected, he stated "[h]e's trying to shift the burden of proof to the Defendant. We don't have to offer any explanations, any witnesses, any testimony. That's improper, Your Honor." The trial court sustained the objection as offered by defense counsel.

However, to properly preserve this issue for appeal, the proper objection was that the question violated Reta's rights against self-incrimination rather than the question improperly shifted the burden of proof. TEX. R. APP. P. 33.1; *see also Greenwood v. State*, 740 S.W.2d 857, 860 (Tex. App.—Dallas 1987, no pet.) (holding objection that closing argument was an impermissible comment on defendant's failure to testify did not preserve self-incrimination issue). Defense counsel made no such objection. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that failure to obtain ruling on objection to improper argument constituted waiver). Furthermore, Reta failed to request an instruction from the trial court to disregard the prosecutor's comments, nor did Reta request a mistrial. *See Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) (holding that to preserve error for appeal, a defendant must obtain an adverse ruling by objecting, requesting an instruction to disregard, or moving for a mistrial). Based on the foregoing, we hold Reta forfeited his right to complain about the jury argument, and his third issue on appeal is overruled.

## FACTUAL SUFFICIENCY OF THE EVIDENCE

Lastly, Reta raises a factual sufficiency challenge to the jury's verdict of guilt. When determining whether a jury's verdict is factually sufficient, an appellate court views all of the evidence in a neutral light and only sets aside the verdict if the evidence is so weak that the verdict is "clearly wrong and manifestly unjust;" or if the verdict is "against the great weight and preponderance of the evidence." *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). As a reviewing court, we may substitute our judgment for the jury's determinations on the weight and credibility of the evidence only "to a very limited degree." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (stating that the factual sufficiency review requires "due deference" to be afforded to jury's determinations). Absent a contradictory showing from

the record, we defer to the jury's determinations regarding the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

> The jury charge read as follows:
>
> [i]f you find from the evidence beyond a reasonable doubt that on or about January the 8th of 2006 in Webb County, Texas, Gabriel Cardona or Jesus Gonzalez did intentionally or knowingly cause the death of Noe Flores by shooting him, and [Reta] acted with intent to promote or assist the commission of the offense . . . you will find the Defendant, Rosalio Reta, guilty of murder.

On appeal, Reta specifically challenges the sufficiency of the evidence "to sustain the jury's implicit finding that [Reta] was the driver of the Nissan Sentra used to commit the murder of Noe Flores as alleged by the State." However, Reta misstates the elements contained within the jury charge. The indictment and the court's charge only required the jury to find beyond a reasonable doubt that Reta was criminally responsible for the conduct of another. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (2003).

Reta's factual insufficiency challenge relies primarily on discrepancies in Martinez-Cerezo's testimony. Martinez-Cerezo testified he worked for the Gulf Cartel and ultimately was a member of two associated groups of assassins. He identified Reta as a member of one of the assassin groups and testified that Reta admitted his participation in the murder. Reta argues Martinez-Cerezo's testimony is unreliable. Reta argues that the remaining testimony only connects him with the *sicario* cell in Laredo and that other members of the Zetas pled guilty to the murder. Additionally, Reta suggests the mere presence of his fingerprints in the car do not show what time he was in the car, and if he participated in the murder. The jury, however, was free to accept or reject the testimony of any witness and evidently chose to believe the State's witnesses, and we remain mindful of such findings. *See Watson,* 204 S.W.3d at 414.

Pursuant to the detailed factual details outlined previously, we hold the evidence factually sufficient to support the jury's verdict. The State presented evidence that Reta returned to the safe house after the murder of Flores, that Reta commented on being the getaway driver, and that Reta was paid for his participation in the targeted murder. The State also provided expert testimony that Reta's fingerprints were found on the pack of cigarettes left in the abandoned Sentra used in the commission of the murder. Detective Garcia testified the cellular phone trail led him to Reta, and ultimately to Reta calling him, threatening him, and telling him to back off the murder investigation.

After a reviewing all the evidence in a neutral light, we cannot conclude the jury's finding of guilt was so clearly against the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See id.* Accordingly, Reta's fourth issue on appeal is overruled.

## CONCLUSION

Because Cardona's conversation provided evidence of Reta's motive and intent, and Reta waived any hearsay objection to Detective Garcia's testimony regarding cellular telephone records, the trial court did not err in admitting the evidence. Furthermore, trial counsel's failure to object based on a Fifth Amendment violation waived the issue on appeal. Finally, the evidence is factually sufficient to support the jury's verdict as included in the court's charge. Accordingly, the judgment of the trial court is affirmed.

Rebecca Simmons, Justice

DO NOT PUBLISH