Affirmed and Memorandum Opinion filed September 20, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00696-CR

___________________

 

Reginald Milton, Appellant

 

V.

 

The state of texas, Appellee



 



 

On
Appeal from the County Criminal Court at Law No. 12

Harris County,
Texas



Trial Court Cause No. 1659998

 



 

 

MEMORANDUM OPINION

            Appellant
Reginald Milton was convicted on one count of perjury. On appeal, he raises
four points of error: (1) that the evidence is legally and factually
insufficient to support his conviction; (2) that the trial court abused
its discretion by admitting a CD of a prerecorded statement, in violation of
the Best Evidence Rule; (3) that the trial court abused its discretion by
denying his motion for mistrial; and (4) that the trial court abused its
discretion by admitting evidence of extraneous bad acts. We affirm.

BACKGROUND

            Appellant served
as an officer with the Texas Southern University Police Department. During his
tenure, one of his responsibilities was to be a custodian of evidence. Under
standard protocol within the department, evidence is normally secured in a
locked storage room apart from appellant’s office in order to protect the chain
of custody.

            In March 2005,
appellant was transferred within the department from the Criminal
Investigations Division to the Dormitory Patrol Division. As part of the
transfer, appellant was expected to vacate his office by April 1, 2005, for its
newly designated occupant, Lieutenant Preston Fontenot. When Lieutenant
Fontenot moved into the office, he uncovered a small-caliber handgun lying on
the floor next to a bookshelf, together with live ammunition. Believing the
items to be unsecured evidence, Lieutenant Fontenot placed the objects in a
locked file cabinet and then brought the matter to the attention of appellant’s
superior, Captain Remon Green.

On April 20, 2005, appellant met with Captain Green
and Lieutenant Fontenot to discuss the items found in his former office. The
meeting was recorded on a minicassette player. The meeting was not part of an
official investigation, and Captain Green did not preface it as such. Instead,
Lieutenant Fontenot indicated that he merely wanted to “get together on the
evidence,” and come to an understanding as to what the items were, why they
were left behind, and whether the chain of custody had been violated. To that
extent, Captain Green asked the following questions: (a) whether the items
recovered were objects used for training purposes or whether they were items of
evidence collected from actual criminal investigations; (b) whether a log was
kept of the evidence; (c) why the items were being stored in appellant’s
office; (d) whether appellant’s office contained any illicit drugs or
other traces of evidence; and (e) whether appellant informed anyone, prior
to vacating his office, that he had evidence stored in there.

Appellant answered that the items did constitute
actual evidence, and that they were properly checked out to him. Appellant also
emphasized that he felt “pressured” to vacate his office by April 1, 2005, and
that he told Captain Green about the items being stored in there before the
interoffice transfer was complete. Captain Green stated that he did not recall
any such discussion. After the meeting concluded, an inventory was taken of
appellant’s former office, where additional unsecured evidence was recovered,
including crack cocaine, a number of sexual assault kits, a video, a dry wall
cut-out, a red bandana, bullet fragments, a Texas identification card, a BB
rifle, and counterfeit currency. 

More than four years after that meeting, in September
2009, appellant testified under oath before an administrative law judge. The
purpose of the hearing was to dispute certain claims regarding appellant’s
licensure in Texas as a certified peace officer. During the hearing, Cheryl
Cash, acting as general counsel for Texas Southern University, conducted the
following examination of appellant:

Q.        And,
so, it’s your testimony that Captain Green never met with you in 2005 regarding
an unsecured evidence investigation?

A.        No, ma’am.

Q.        So,
looking at Respondent’s Exhibit 10, page 20 -- will you turn to that?[[1]]

A.        Yes,
ma’am.

Q.        This
office that you said you vacated in August, 2005 --

A.        No.
It was --

Q.        Well,
that was your testimony.

A.        I
believe it was earlier because -- I know it was before the summer because I was
working dorms during the summer.

Q.        Well,
okay. Let’s look at the second paragraph. “On April 20th, 2005, Lieutenant
Fontenot and I met with Sergeant Milton and requested that he provide details
about the items that were left in the office.”

Are you saying this has never
happened?

A.        No,
ma’am.

Q.        Never
happened? Captain Green made this up in May, 2005?

A.        I did
not meet with him on this.

Q.        “During
our meeting, Lieutenant Fontenot and I asked Sergeant Milton if the items were
actually evidence; and Sergeant Milton indicated that the items were items of
evidence collected by members of this department.”

            You
never made that statement to him?

A.        I
don’t recall this meeting, no, ma’am.

Q.        “Sergeant
Milton was also asked if the items had been logged in and out of the evidence
locker to protect the chain of custody. He again indicated that the items were
properly documented, checked out to be in his office, and all evidence could be
accounted for.”

            You
never made that statement?

A.        No,
ma’am.

Q.        You
were never in a meeting with Captain Green regarding unsecured crack cocaine
evidence lying about in your office?

A.        No,
ma’am.

Q.        So,
this whole investigation and document, he just simply made it up, signed his
name to it?

A.        As
evidence custodian, I didn’t keep any evidence in my office. The evidence --

Q.        Okay.
My question to you is not about the facts. I’m simply asking you about an
investigation in 2005.

A.        I did
not have a meeting with Captain Green on this particular item.

Q.        So,
that report where it says he did is -- you’re characterizing it as a lie. Is
that correct?

A.        That’s
correct, ma’am. They had written me up for everything else previous. Why didn’t
they write me up for this?

Following the hearing, appellant was charged by
information with perjury. A jury found him guilty as charged, and punishment
was assessed at one year of confinement in the Harris County jail. The trial
court suspended the sentence and placed appellant on community supervision for
a period of two years. Appellant timely appealed.

SUFFICIENCY OF THE EVIDENCE

            In his first
issue, appellant argues that the evidence is legally and factually insufficient
to support his conviction.

When deciding whether the evidence is sufficient to
support findings that must be proven beyond a reasonable doubt, the Court of
Criminal Appeals has held that we may only employ a single standard of review:
legal sufficiency. Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App.
2010) (plurality opinion); see also Howard v. State, 333 S.W.3d
137, 138 n.2 (Tex. Crim. App. 2011). Accordingly, we evaluate appellant’s first
issue under a rigorous and proper application of Jackson v. Virginia,
443 U.S. 307 (1979). See Pomier v. State, 326 S.W.3d 373, 378 (Tex.
App.—Houston [14th Dist.] 2010, no pet.).

When reviewing the legal sufficiency of the evidence,
we examine all of the evidence in the light most favorable to the verdict and
determine whether a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at
319. Although we consider everything presented at trial, we do not reevaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact finder. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007). Because the jury is the sole judge of the credibility of witnesses
and of the weight given to their testimony, any conflicts or inconsistencies in
the evidence are resolved in favor of the verdict. Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and
improperly admitted evidence. Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007). We also consider both direct and circumstantial
evidence, as well as any reasonable inferences that may be drawn from the
evidence. Id.

To obtain a conviction for perjury, the State was
required to prove that appellant made a false statement under oath with intent
to deceive and with knowledge of the statement’s meaning. See Tex. Penal
Code Ann. § 37.02 (West 2010). In a prosecution for perjury, intent to
deceive may be inferred from the circumstances. See Mitchell v. State,
608 S.W.2d 226, 229 (Tex. Crim. App. 1980).

After parsing his testimony from the administrative
hearing, appellant claims that the evidence is insufficient to show that he
ever made a false statement under oath. During his criminal trial, appellant
explained that he never denied having a meeting with Captain Green; rather, he
only denied having a meeting with regards to an internal investigation of which
he was the subject. According to appellant, he was unable to testify to an
internal investigation during his administrative hearing because he was never
placed on notice of an investigation at the time of his meeting in April 2005. Appellant
claimed that Captain Green and Lieutenant Fontenot never mentioned an official
internal investigation before they questioned him. Appellant also claimed that
his rights were never read to him at the beginning of their meeting, which is
customary with internal investigations. As he testified, the meeting in April
2005 only concerned “evidence and some investigations that [appellant] had
conducted” on behalf of his coworkers.

Appellant also claimed that he did not perjure
himself when he denied meeting with Captain Green to discuss “unsecured crack
cocaine evidence.” Appellant argues that the words “crack cocaine” were never
used during the meeting, and that no illicit drugs had been uncovered in his
office prior to it. To this extent, appellant argues that the State has
misconstrued his statements from the administrative hearing.

Viewing the evidence in the light most favorable to
the verdict, we conclude that the evidence is sufficient to support the
conviction. During the administrative hearing, appellant testified under oath
that he did not meet with Captain Green to discuss items of evidence left
behind in his office. Captain Green testified that this statement was false and
that appellant was made aware of the subject of their meeting before it occurred.
A recording of this meeting was published in its entirety for the jury’s
consideration. Captain Green also opined that appellant had a motive to testify
untruthfully during the administrative hearing because he was in danger of
losing his peace officer’s license. Based on this evidence, a rational juror
could have found every essential element of the offense beyond a reasonable
doubt. We overruled appellant’s first issue.

BEST EVIDENCE RULE

            In his second
issue, appellant complains that the trial court abused its discretion by
admitting into evidence a duplicate recording of the April 2005 meeting, rather
than the original. The meeting between appellant, Captain Green, and Lieutenant
Fontenot was originally recorded on a minicassette player. Because the trial
court was not equipped to play minicassettes, the State transferred the
recording to a CD, and offered the duplicate into evidence instead. Citing the
Best Evidence Rule, appellant insists that if the recording was to be played,
it must have been from the minicassette player, and not the CD.

            We review a trial
court’s decision to admit or exclude evidence for an abuse of discretion. Powell
v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); Shaw v. State,
329 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2010, pet. ref’d). The
trial court abuses its discretion when its decision is arbitrary, unreasonable,
or without reference to guiding rules or principles. Makeig v. State,
802 S.W.2d 59, 62 (Tex. Crim. App. 1990). Because the trial court has no discretion
in determining the applicable law, the trial court also abuses its discretion
when it fails to analyze the law correctly and apply it to the facts of the
case. State v. Kurtz, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Under
this standard, the trial court’s ruling will be upheld if it falls within the
zone of reasonable disagreement. McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App. 2005).

            Under Rule 1003
of the Texas Rules of Evidence, a duplicate is admissible to the same extent as
an original unless a question is raised as to the authenticity of the original
or, under the circumstances, it would be unfair to admit the duplicate in lieu
of the original. Tex. R. Evid. 1003. Stated another way, a duplicate is
inadmissible if reasonable jurors might differ as to whether the original is
what it is claimed to be. Narvaiz v. State, 840 S.W.2d 415, 431 (Tex.
Crim. App. 1992).

            Appellant
primarily challenges the authenticity of the CD, rather than the original. He
claims that the CD was created in 1994, and thus, “[t]he properties of the CD
do not coincide with the date stated at the beginning of the recording.” He
also claims that the recording may have been altered because a fourth person
can be heard on the CD. Finally, he objects that the chain of custody was never
documented between Captain Green’s possession of the minicassette to its
transfer onto a CD.

            The trial court
questioned Captain Green about the recording outside the presence of the jury.
Captain Green testified that the CD was an exact duplicate of the minicassette.
He also said that he could only hear three voices on the recording: his own,
appellant’s, and Lieutenant Fontenot’s. Appellant never questioned the
authenticity of the original recording at trial, and defense counsel conceded
that she never compared the original to the CD, even though the original was
made available to her. We find that the trial court did not abuse its
discretion in admitting the duplicate in lieu of the original. See Hall v.
State, 67 S.W.3d 870, 876 (Tex. Crim. App.) (finding no abuse of discretion
where maker of recording was not present when original was duplicated), vacated
on other grounds, 537 U.S. 802 (2002); Ballard v. State, 23 S.W.3d
178, 181 (Tex. App.—Waco 2000, no pet.) (finding no abuse of discretion where
defendant did not challenge the authenticity of the original recording at trial
or on appeal). Appellant’s second issue is overruled.

MOTION FOR MISTRIAL

            In his third
issue, appellant contends the trial court abused its discretion by denying his
motion for mistrial, which arose out of an alleged violation of “the Rule,” or
more formally, the witness sequestration rule.

            Appellant invoked
the Rule at the beginning of his trial. If a party invokes the Rule, the trial
court must order witnesses excluded from the courtroom so they cannot hear the
testimony of other witnesses. See Tex. R. Evid. 614. When placed under
the Rule, witnesses must also be instructed that they are not to converse with
each other or with any other person about the case, except by permission of the
court. See Tex. Code Crim. Proc. Ann. art. 36.06 (West 2010). The Rule
is designed to prevent witnesses from altering their testimony, consciously or
not, based on the testimony of other witnesses. Routier v. State, 112
S.W.3d 554, 590 (Tex. Crim. App. 2003).

            During the middle
of trial, defense counsel was informed by her assistant that some of the
State’s witnesses may have been discussing the case in a holding area outside
the courtroom. Counsel alleged that the witnesses were Lieutenant Fontenot, who
had already testified previously that day, and Sergeant Jemal Starks, who had
also testified earlier that he had taken photographs of unsecured evidence
collected from appellant’s office. Counsel’s assistant did not present any
sworn testimony as to what he heard. Counsel, nonetheless, moved for a
mistrial, which the trial court denied based on the “[p]resent state of the
record.”

            After the trial
court made its ruling, counsel petitioned the court to reinstruct the witnesses
of their obligations under the Rule. The witnesses having been so instructed,
counsel moved to “amend” her objection to also include Investigator Mark
Hamilton, who would later testify that he collected evidence against appellant
and presented a case to the District Attorney’s Office. Counsel did not suggest
or allege that Investigator Hamilton had violated the Rule. The trial court did
not rule on the objection, observing instead that all of the witnesses had been
reminded of the Rule.

            We review a trial
court’s denial of a motion for mistrial for an abuse of discretion. Archie
v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A mistrial is only
required in extreme circumstances, where prejudice is incurable. Hawkins v.
State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is a
serious remedy, intended for conduct so improper and prejudicial that
“expenditure of further time and expense would be wasteful and futile.” Ladd
v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

            A violation of
the Rule is not, in itself, cause for reversible error. Webb v. State,
766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989). The defendant must also show
that he was harmed by the violation. See Archer v. State, 703 S.W.2d
664, 666 (Tex. Crim. App. 1986). To that extent, the Court of Criminal Appeals
has determined that injury or prejudice to the defendant is dependent upon the
showing of two criteria: (1) whether a witness actually conferred with or
heard the testimony of another witness; and (2) whether the witness’s
testimony contradicted the testimony of a witness from the opposing party, or
whether it corroborated the testimony of a witness he had conferred with or actually
heard. Webb, 766 S.W.2d at 240.

            The record does
not establish that the Rule was ever violated. Defense counsel alleged that
witnesses had been conversing about the case, but her allegations were purely
secondhand. The only person to claim that witnesses were violating the Rule was
counsel’s assistant, but he never personally identified the witnesses to the
trial court, nor did he testify as to the specific subject of their discussion.
Moreover, counsel never asked to question the witnesses to see if the Rule had
been violated.

Even if we were to assume that the Rule had been
violated, appellant cannot demonstrate that he was harmed by one witness being
influenced by the testimony of another. Counsel only identified three witnesses
by name who may have been discussing the case outside the courtroom. Two of
those witnesses, Lieutenant Fontenot and Sergeant Starks, had already testified
and would not testify again during the guilt-innocence phase of the proceeding.
The only other witness identified was Investigator Hamilton, but his testimony
proved to have a limited impact on the proceeding. Investigator Hamilton would
later testify that he reviewed the audio recording in 2009, interviewed the
persons involved in the April 2005 meeting, and presented a case to the Harris
County District Attorney’s Office. Investigator Hamilton was not present during
the April 2005 meeting, nor did he attend the administrative hearing in which
the perjury charge arose. The record does not contain any evidence to suggest
that his testimony was influenced. Without any showing of harm, we conclude the
trial court did not abuse its discretion in denying appellant’s motion for
mistrial. See id.; Potter v. State, 74 S.W.3d 105, 111 (Tex.
App.—Waco 2002, no pet.) (finding no abuse of discretion, despite a violation
of the Rule, where the record did not show that the witnesses’ testimony was
influenced or that the defendant was harmed or prejudiced by the violation). We
overrule appellant’s third issue.

EXTRANEOUS BAD ACTS

            In his fourth issue,
appellant argues that the trial court abused its discretion by admitting a
disciplinary record containing inadmissible evidence of extraneous bad acts.

            Before trial,
appellant filed a motion in limine, which required the State to approach the
bench before introducing evidence of appellant’s disciplinary record. During
appellant’s direct examination, defense counsel questioned appellant about a
statement made during his administrative hearing:

Q.        Now look at line 20. Your response? Read that for
us.

A.        “That’s
correct, ma’am. They had written me up for everything else previous, why didn’t
they write me up for this?” 

Q.        Now,
why did you make that response?

A.        Because
at that particular time, as much as I could remember, anything I had done with
the department, I was being written up for or disciplined for.

Q.        Okay.

A.        And
if they had found any evidence in my vacated office, I’m sure they would have
done something at that particular time rather than just meeting with me about
the evidence protocol.

            Following
appellant’s testimony, the State called Captain Green as a rebuttal witness to
clarify the extent of appellant’s disciplinary record. Captain Green testified
that appellant was suspended for five days without pay as a result of the
unsecured evidence discovered in his office. Captain Green also testified that
when appellant returned to duty, he was placed on a six-week performance
improvement plan, in which his performance was evaluated on a weekly basis. In
addition to Captain Green’s testimony, the prosecutor introduced a letter dated
June 3, 2005 from the Interim Chief of Police, informing appellant of the terms
of his suspension. The letter stated that the reasons for appellant’s
suspension were (1) insubordination, and (2) “[o]ther job related conduct
or job performance that interferes with fulfilling job performance, standards,
or the job performance of other personnel.”

            Appellant
objected to the admission of the letter because Captain Green did not compose
it, and his name was nowhere to be found on it. On appeal, appellant argues
that the letter constitutes inadmissible evidence of extraneous bad acts
because it does not specifically reference the unsecured evidence as a reason
for appellant’s suspension.

We review the trial court’s decision regarding the
admission of evidence for an abuse of discretion. Powell, 63 S.W.3d at
438.

Our rules of evidence make clear that evidence of
extraneous bad acts is generally inadmissible. Tex. R. Evid. 404. Nevertheless,
otherwise inadmissible evidence may be admitted if the party against whom the
evidence is offered “opens the door.” Schutz v. State, 957 S.W.2d 52, 71
(Tex. Crim. App. 1997). A defendant can open the door with testimony or
questioning that creates a false impression of his past behavior. See Delk
v. State, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993); House v. State,
909 S.W.2d 214, 219 (Tex. App.—Houston [14th Dist.] 1995) (Lee, J.,
concurring), aff’d, 947 S.W.2d 251 (Tex. Crim. App. 1997). Once the door
has been opened, the State may then present evidence to correct the mistaken
impression. See Weyandt v. State, 35 S.W.3d 144, 154 (Tex. App.—Houston
[14th Dist.] 2000, no pet.).

Appellant’s testimony created a false impression that
he had not been disciplined after the discovery of unsecured evidence in his
office. While testifying as a rebuttal witness, Captain Green indicated that
appellant had in fact been suspended, and that this disciplinary action was
“taken as a result of the unsecured evidence investigation.” The trial court
did not abuse its discretion by allowing testimony to expose the falsehood. Cf.
Metts v. State, 22 S.W.3d 544, 548–49 (Tex. App.—Fort Worth 2000, pet.
ref’d).  

Even where evidence of extraneous acts is admissible,
the Court of Criminal Appeals has held that the evidence must be excluded if
its probative value is substantially outweighed by the danger of unfair
prejudice. See Mozon v. State, 991 S.W.2d 841, 846 (Tex. Crim.
App. 1999); see also Tex. R. Evid. 404(b). In evaluating the trial
court’s decision, we must therefore consider the following criteria:

(1) how compellingly the extraneous offense serves to
make a fact of consequence more or less probable—a factor which is related to
the strength of the evidence presented by the proponent to show the defendant,
in fact, committed the extraneous offense;

(2) the potential the other offense evidence has to
impress the jury “in some irrational but nevertheless indelible way”;

(3) the time the proponent will need to develop the
evidence, during which the jury will be distracted from consideration of the
indicted offense;

(4) the force of the proponent’s need for this
evidence to prove a fact of consequence, i.e., does the proponent have other
probative evidence available to him to help establish this fact, and is this
fact related to an issue in dispute?

Jensen v. State, 66
S.W.3d 528, 541 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d). Relevant
evidence is presumed admissible, and the trial court should only exclude such
evidence when there is a “clear disparity between the degree of prejudice of
the offered evidence and its probative value.” Mozon, 991 S.W.2d at 847.

            Balancing these
factors together, we find that any prejudice stemming from the extraneous
evidence did not outweigh its probative value. The State questioned Captain
Green about appellant’s disciplinary record to prove that the items left in
appellant’s office were in fact items of unsecured evidence and that the meeting
in April 2005 concerned more than just “evidence protocol.” This discussion
consumed only a small portion of the record, and was necessary to impeach
appellant and to provide the jury with a complete and accurate understanding of
the facts. The trial court was in a superior position to evaluate the impact of
the evidence. Jensen, 66 S.W.3d at 541. We cannot conclude that the
evidence was admitted arbitrarily or unreasonably. Appellant’s fourth issue is
overruled.

CONCLUSION

            Having
overruled each of appellant’s four issues, we affirm the judgment of the trial
court.

 

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Brown, and
Christopher.

Do Not Publish —
Tex. R. App. P. 47.2(b).









[1] This exhibit included a
memorandum report prepared by Captain Green following his meeting with
appellant on April 20, 2005. All passages recited by Cash during her
examination are from the Green memorandum.